**Wilma VOSTACK, Plaintiff,**

v.

**Joel AXT, Ph.D. et al., Defendants.**

**No. C-2-79-828.**

United States District Court,
S. D. Ohio, E. D.

March 27, 1981.

---

Walter J. Wolske, Jr., Wolske & Blue, Columbus, Ohio, for plaintiff.

Bruce G. Lynn, Bricker & Eckler, Columbus, Ohio, for defendants.

## OPINION AND ORDER

KINNEARY, District Judge.

Before the Court is defendants' motion for summary judgment in this medical malpractice case involving the administration of radiation overdosages to the plaintiff, Wilma Vostack. Mrs. Vostack filed this action more than three years after the cause of action accrued, but she relies on Ohio's "savings clause," § 2305.15, Ohio Revised Code,[1] to toll the running of the statute of limitations. The gravamen of the defendants' motion challenges the constitutionality of Ohio's savings clause. In ruling on defendants' motion, the Court will construe the evidence in the light most favorable to the plaintiff. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir. 1962).

### I. Factual Background

Wilma Vostack was suffering from cancer in 1975. She entered Riverside Methodist Hospital and underwent radiation therapy under the supervision of defendant Stephen R. Andresen, M.D. Her radiation treatments began on December 8, 1975 and ended on January 28, 1976. She continued to see and consult with Dr. Andresen on her illness until June 13, 1977.

In April of 1976, it was learned that over four hundred cancer patients at Riverside Hospital had received damaging overdosages of radiation. Wilma Vostack was one of these patients. She initially filed this case in the Franklin County Court of Common Pleas on August 8, 1979 claiming that the overdosages caused severe radiation burns on the inside and outside of her body. The case was removed to this court on September 14, 1979.

The second defendant in this action is Joel Axt, a Ph.D. nuclear physicist who was a member of the Radiation Therapy Department at Riverside Hospital. Mr. Axt was responsible for the calibration and measurement of the cobalt 60 radiation therapy unit which administered the overdosages. The Court notes that in his answer to the complaint, Mr. Axt has admitted his negligence in calibrating the radiation instrument.

In their motion for summary judgment, the defendants argue that plaintiff's action is time-barred by Ohio's statute of limitations pertaining to physicians for malpractice and to non-physicians for ordinary negligence. Underlying the defendants' argument is their constitutional challenge to Ohio's savings clause, § 2305.15, O.R.C., which plaintiff has relied on to toll the limitations statute on her cause of action.

With regard to defendant Dr. Andresen, under § 2305.11, O.R.C., an action for medical malpractice must be brought within one year of the date upon which the cause accrued.[2] In determining the date of accrual, the Ohio Supreme Court has repeatedly stated that the statute of limita-

---

1. Ohio's savings clause, § 2305.15, O.R.C., provides:

 When a cause of action accrues against a person, if he is out of state, or has absconded, or conceals himself, the period of limitation for the commencement of the action as provided in sections 2305.04 to 2305.14, inclusive, and sections 1302.98 and 1304.29 of the Revised Code, does not begin to run until he comes into the state or while he is so absconded or concealed. After the cause of action accrues if he departs from the state, or absconds or conceals himself, the time of his absence or concealment shall not be computed as any part of a period within which the action must be brought.

2. Section 2305.11(A), O.R.C., provides that "[a]n action for ... malpractice, including an action for malpractice against a physician, podiatrist, or a hospital, ... shall be brought within one year after the cause thereof accrued ...."

220

tions does not begin to run until the physician-patient relationship is terminated. *Wyler v. Tripi*, 25 Ohio St.2d 164, 267 N.E.2d 419 (1971); *Ishler v. Miller*, 56 Ohio St.2d 447, 384 N.E.2d 296 (1978). In this case, the relationship between Dr. Andresen and Mrs. Vostack terminated on June 13, 1977. Therefore, absent the application of Ohio's savings clause, Mrs. Vostack was required to bring her action against Dr. Andresen on or before June 13, 1978.

■ With regard to defendant Axt, as a non-physician but an employee of the hospital, there is a preliminary question on whether the one-year statute of limitations, § 2305.11 O.R.C., or the two-year bodily injury statute of limitations, § 2305.10 O.R.C., applies.[3] As defendants have pointed out, however, the resolution of this question is unnecessary in this case. Even if the two-year bodily injury statute, § 2305.10 O.R.C., applies, the limitations period began upon the administration of the last radiation therapy on January 28, 1976, and, absent the application of Ohio's savings clause, the limitations period expired on January 28, 1978. Thus, the defendants contend that by her filing this suit on August 8, 1979, Mrs. Vostack's cause of action is time-barred.

### II. Ohio's Savings Clause

#### A. Application and Statutory Interpretation

■ The defendants do not dispute that if Ohio's savings clause, § 2305.15, O.R.C., is found constitutional, it would apply to effectively toll the running of the statute of limitations on Mrs. Vostack's cause of action.

The relevant portion of Section 2305.15, O.R.C., provides:

After a cause of action accrues if [the defendant] departs from the state, . . . the time of his absence . . . shall not be computed as any part of a period within which the action must be brought.

The effect of the statute, therefore, is to toll the running of the applicable limitations statute for a time period in which the defendants were absent from the state. *See, Wetzel v. Weyant*, 41 Ohio St.2d 135, 323 N.E.2d 711 (1975).

Defendant Axt moved his residence from Ohio to Massachusetts in June or July of 1976. Likewise, in June of 1977, defendant Dr. Andresen moved his residence to Illinois. Consequently, under the savings clause, Mrs. Vostack's action was not time-barred since both defendants departed from the state before the statute of limitations expired.

The defendants argue that by moving their residences out of Ohio, the effect of the savings clause against them as nonresidents is too harsh. In effect, an Ohio resident has *ad infinitem* to bring suit against a nonresident even though under Ohio's liberal rules allowing substituted service, an Ohio resident can obtain service over a nonresident any time after a cause of action arises.

■ While the Court recognizes this harsh effect of Ohio's savings clause in some instances, it is precisely the interpretation the Ohio Supreme Court has chosen to give it. *See Seely v. Expert, Inc.*, 26 Ohio St.2d 61, 65–68, 269 N.E.2d 121 (1971); *Wetzel v. Weyant, supra* at 137–38, 323 N.E.2d 711; *Mead Corporation v. Allendale Mutual Insurance Co.*, 465 F.Supp. 355, 361 (N.D.Ohio 1979). In a diversity action in which Ohio law controls, the Court must follow the Ohio Supreme Court's interpretation of the savings clause. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967).

#### B. Constitutionality

Apart from the interpretation and application of the savings clause, the gravamen

---

3. Section 2305.10, O.R.C., provides that "[a]n action for bodily injury . . . shall be brought within two years after the cause arose."

The issue can be more precisely stated as whether the one-year statute of limitations, under the purview of § 2305.11(A), or the two-year statute of limitations, under § 2305.10, is applicable to a negligence action against an employee of a hospital. The Court notes that this issue has not been resolved by the Ohio courts.

of defendants' motion challenges its constitutionality under the Fourteenth Amendment to the United States Constitution. The defendants argue:

> [Ohio's savings clause] has its origin prior to the long arm laws at a time when wrongdoers could avoid suit by remaining out of Ohio until it was too late to sue. With the advent of long arm jurisdiction and additional methods of service of process, including publication, most states have judicially or legislatively removed their savings statute.

> * * * * * *

> In the present case, plaintiff would have the statute of limitations extended until the day defendants die because they chose to carry on their profession in another state. * * *

> If § 2305.15 O.R.C. has the tolling effect which plaintiff contends that it does, then the statute is unconstitutional. It restrains the fundamental constitutional right of freedom of travel, it denies equal protection of law to the class of interstate travelers without supporting a legitimate state objective and it denies due process of law to individuals for such totally arbitrary and capricious grounds as the individual's desire to vacation in another state rather than Ohio.

Upon full consideration, the Court is unpersuaded by the defendants' argument.

The Fourteenth Amendment prohibits a state from denying individuals equal protection of the laws. A challenge to Ohio's savings clause under the Fourteenth Amendment must be analyzed in a two-step approach. First, the Court must determine what the appropriate standard of review is or, in other words, what burden of justification the statute's classification must meet. Secondly, the Court must review the statute's classification under this standard and determine whether it passes constitutional muster.

 In determining the appropriate standard of review, the Court must view the nature of the classification and the individual interests affected. *Memorial Hospital*

*v. Maricopa County*, 415 U.S. 250, 253, 94 S.Ct. 1076, 1079, 39 L.Ed.2d 306 (1974). When a statute does not implicate any fundamental interest or suspect classification then the rational basis test applies and the challenged statute should fall only if the classification is without any reasonable basis. *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911). If, however, the classification touches on a fundamental right, then the statute's constitutionality must be judged by the stricter test of whether it promotes a compelling state interest. *Shapiro v. Thompson*, 394 U.S. 618, 638, 89 S.Ct. 1322, 1333, 22 L.Ed.2d 600 (1969).

The classification and differential treatment created by Ohio's savings clause is between those defendants who are present in the state and those defendants who are absent from the state. The in-state defendants are accorded statute of limitations protection against the possibility of a cause of action pending indefinitely, while the out-of-state defendants are not. Stated another way, only plaintiffs with a cause of action against out-of-state defendants have the benefit of Ohio's savings clause, to toll the running of an applicable limitations statute.

The defendants contend that this classification and differential treatment impairs their fundamental right to travel interstate and "to migrate, resettle, find a new job, and start a new life." *Shapiro v. Thompson, supra* at 629, 89 S.Ct. at 1328. The Court disagrees and finds that defendants' reliance on the right-to-travel cases such as *Shapiro* and *Associated Adjusters v. Dept. of Insurance*, 50 Ohio St.2d 144, 363 N.E.2d 730 (1977), is misplaced.

 The state legislature's decision to withdraw the statute of limitations protection from Ohio residents and non-residents alike, who have committed tortious injuries in Ohio and then become absent from the state, does not constitutionally infringe upon one's right to travel to and, perhaps, settle in another state. As the United States Supreme Court has stated, the right-to-travel cases are not to be read to "cast

doubt on the validity of appropriately defined and uniformly applied bona fide residence requirements." *Dunn v. Blumstein*, 405 U.S. 330, 342, 92 S.Ct. 995, 1003, 31 L.Ed.2d 274 (1972). Therefore, if the granting of a state statute's benefits can be contingent upon one's residence in the state, then it also seems constitutionally permissible to this Court for the legislature to tailor the statute of limitations benefits on one's *presence* in the state. Furthermore, the Supreme Court has made it clear that the defendants have no fundamental right to the protection of limitations statutes. *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945); *Hopkins v. Kelsey-Hayes, Inc.*, 628 F.2d 801, 809 (3d Cir. 1980).[4]

■ Thus, the appropriate standard of review for the Court to apply is the rational basis test, and in applying this test to Ohio's savings clause, we take considerable guidance from the excellent opinion of Judge Garth in *Hopkins v. Kelsey-Hayes, Inc.*, 628 F.2d 801 (3d Cir. 1980).

■ In *Hopkins*, the Third Circuit dealt with two cases which presented identical constitutional challenges to New Jersey's "tolling statute." The New Jersey statute tolls the limitations statute in actions against foreign corporations which are not represented in New Jersey. Therefore, foreign corporations which are represented in New Jersey receive the full benefit of all limitations statutes, while foreign corporations which are not represented in New Jersey are denied the same protection. The defendants were two non-represented foreign corporations that argued:

, [T]he purpose of the tolling provision was to protect New Jersey plaintiffs who could not obtain *in personam* jurisdiction over out-of-state defendants * * * [It] is no longer relevant or needed to promote this interest in cases where an out-of-state corporate defendant is amenable to New Jersey's long-arm jurisdiction. * * [T]he plaintiffs may assert their causes of action and serve their complaints upon non-represented foreign corporate defendants in the same fashion as they serve domestic corporations or foreign corporations 'represented' in New Jersey. Thus, ... the extra protection provided New Jersey plaintiffs by the tolling provision, is unnecessary and arbitrary in light of the original purpose of the tolling provision ... [and it is] ... therefore unconstitutional.

*Hopkins v. Kelsey-Hayes, Inc., supra* at 809–810.

The Third Circuit upheld the New Jersey statute under the rational basis test by stating that

The defendant's [sic] argument overlooks the fact that the tolling provision must be upheld if it 'rationally furthers *any* legitimate state objective,' without regard to whether the legislature specifically focused on that objective. [Citation omitted.] In this case, at least one such legitimate objective is readily apparent: the tolling provision eases the burdens upon New Jersey plaintiffs prosecuting lawsuits against out-of-state defendant corporations which are not represented in New Jersey, and which, in a great many

**4.** In *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945) the Court speaking through Justice Jackson, stated:

Statutes of limitation find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. [citation omitted.] They are by definition arbitrary, and their operation does not discriminate be-

tween the just and the unjust claim, or the voidable and unavoidable delay. They have come into the law not through the judicial process but through legislation. They represent a public policy about the privilege to litigate. Their shelter has never been regarded as what now is called a "fundamental" right or what used to be called a "natural" right of the individual. He may, of course, have the protection of the policy while it exists, but the history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control.

instances, are difficult to locate and to serve, despite the availability of the long-arm rule. [Emphasis in original.] * * * Because the tolling provision fulfills the legitimate state purpose of easing the special burdens of suits against non-represented foreign corporations, we cannot say that the distinction which it recognizes is irrational.

*Hopkins v. Kelsey-Hayes, Inc., supra,* 810–811.

This Court is in agreement with *Hopkins* and determines that Judge Garth's analysis and reasoning equally applies to the instant case.

The tolling effect of Ohio's savings clause is tied to a defendant's amenability to *personal* service. Therefore, if a defendant is not amenable to personal service within Ohio, he is deemed to be "out of state" within Section 2305.15 and the statute of limitations is prevented from running in his favor. This rule applies despite the fact that the whereabouts of the defendant might be known and substituted service might be available under Ohio's Rules of Civil Procedure. *Seely v. Expert, Inc., supra* 26 Ohio St.2d at 65–66, 269 N.E.2d 121; *Mead Corporation v. Allendale Mutual Insurance Co., supra* at 361.

The Court sees the savings clause rationally serving the legitimate state purpose of easing the possible burdens on plaintiffs in suits against out-of-state defendants. Since service of process under the long-arm statute is more difficult and time-consuming to achieve than service within the state, and since out-of-state defendants may be difficult to locate let alone serve, tolling the statute of limitations protects Ohio plain-

tiffs and facilitates their lawsuits against such defendants.[5] The Court therefore concludes that it is not irrational for the Ohio Legislature to distinguish between in-state and out-of-state defendants.

WHEREUPON, the Court determines that the defendants' motion is without merit and should, therefore, be DENIED.

IT IS SO ORDERED.

---

5. The Ohio Supreme Court provided a rational explanation for the savings clause's strict application in *Seeley v. Expert, Inc., supra* 26 Ohio St.2d at 69–70, 269 N.E.2d 121.

Any rule establishing the inapplicability of the "savings clause" to situations where a defendant is amenable to process could not logically make any distinction as to the type of process. It logically would have to apply regardless of whether the non-resident was amenable to process under R.C. 2703.20 [service of process upon non-resident owners or operators of motor vehicles], under the "long-arm" statutes, R.C. 2307.382 and 2307.-383, or by some other method. It likewise would apply where service of process is not needed to obtain a personal judgment, e. g., cognovit judgments. Then, too, if the test is simply amenability to process, the "savings clause" would not be applicable, despite its language, to a person who "conceals himself" if he is amenable to process under R.C. 2703.20 as "the licensed operator or owner of any motor vehicle * * * who * * * conceals his whereabouts."