PACK ET AL., APPELLANTS, *v.* CITY OF CLEVELAND ET AL., APPELLEES.

[Cite as Pack *v.* Cleveland (1982), 1 Ohio St. 3d 129.]

(No. 81-1109—Decided August 4, 1982.)

*Messrs. Chattman, Moss, Chattman, Garfield & Friedlander* and *Mr. Douglas J. Paul,* for appellants.

*Mr. James E. Young,* director of law, *Mr. D. John Travis* and *Mr. Bruce A. Taylor,* for appellees.

HOLMES, J. This matter involves the appeal of a judgment of the Court of Appeals for Cuyahoga County affirming an order of the Court of Common Pleas which held that the exemption under R.C. 2907.35(C) of motion picture operators or projectionists from the operation of the obscenity statute R.C. 2907.31, pertaining to disseminating matter harmful to juveniles, and R.C. 2907.32, dealing generally with pandering obscenity, was unconstitutional as being violative of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

The major issue presented here is before this court in an unusual, if not

unique, stance. The questioned section of law, R.C. 2907.35(C), became effective January 1, 1974 and reads as follows:

"Sections 2907.31 and 2907.32 of the Revised Code do not apply to a motion picture operator or projectionist acting within the scope of his employment as an employee of the owner or manager of a theater or other place for the showing of motion pictures to the general public, and having no managerial responsibility or financial interest in his place of employment, other than wages."

It appears that this section had not been justiciably questioned by municipal prosecutor's offices in Ohio, including the prosecutor's office of the city of Cleveland, until the pronouncement by the Court of Appeals for Cuyahoga County, in an appeal brought by a convicted adult bookstore clerk, that this section of law was unconstitutional as related to those defendants in that it was repugnant to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. See *State* v. *Burgun* (1976), 49 Ohio App. 2d 112 [3 O.O. 3d 177].

It appears that the city of Cleveland took the position following the holding in *Burgun* that even though the bookstore clerks did not have standing to question the constitutionality of this section of law, the opinion of the Court of Appeals did pronounce the law of the district, even though in the form of "judicial dictum."

The city shows that additional challenges to the exception of R.C. 2907.35(C) followed in appeals of convictions of adult bookstore clerks and employees. The city prosecutor of Cleveland, it would appear, continued to resist the challenges on the basis that these employees did not have the standing to question the constitutionality of the section.

In the appeal of one of these cases to this court, it was held that the attack upon the statute was not well founded in that "[b]efore an individual can challenge state legislation as violative of the federal constitution he must bring himself within the class affected by the unconstitutional feature." *State* v. *Burgun* (1978), 56 Ohio St. 2d 354, 365 [10 O.O. 3d 485].

Even in light of this court's having declined to pronounce this section of law unconstitutional, the prosecutor's office of the city of Cleveland, relying upon the holding of the Court of Appeals of that district, began to prosecute motion picture operators and projectionists. Accordingly, these appellants brought this declaratory judgment action essentially seeking a determination that R.C. 2907.35(C) does not violate the Equal Protection Clause of the Fourteenth Amendment. The case was submitted to the trial court on a limited stipulation of fact that appellants were licensed movie theater projectionists and members of Local 160, Cleveland Motion Picture Operators Union, and that they had been, or were subject to, prosecution by appellee, city of Cleveland, for violation of R.C. 2907.32 notwithstanding the provisions of R.C. 2907.35(C).

The trial court stated that the prior opinion of the Court of Appeals for Cuyahoga County holding the latter section of law unconstitutional was not *obiter dictum,* but "judicial dictum" — whatever difference in dictum that

might be. In any event, the trial court concluded, as the city had argued, that the Court of Appeals' determination of unconstitutionality, although not necessary to the determination of that case, could not "be dismissed as mere *obiter dicta,* completely superfluous to the holding of the case."

Although we are inclined to question the firmness of the ground upon which the city of Cleveland based its failure to enforce this statute as written and adopted by the General Assembly, and in so doing rejected the rule of construction that statutes are presumed to be constitutional, we conclude that these appellants did have standing to seek the constitutional determination here. It cannot be denied that these appellants were within the class affected by the statute under question and consideration. It may be observed that the further language of the opinion in *State* v. *Burgun, supra,* at page 365, is that "* * * a person who is seeking to raise the issue of the validity of a discriminatory enactment has no standing for that purpose unless he belongs to the class which is prejudiced by the statute." Such a statement of the law is accurate as it would relate to a claim of an unconstitutionally discriminatory law as was the case in *Burgun.* However, that statement must not be interpreted as providing the only avenue for the constitutional review of legislation.

Where a complainant asserts the validity of a law in a declaratory judgment proceeding and shows that he is affected by, or materially interested in, a statute or ordinance, and that he has a justiciable cause concerning such law, the litigant's standing may be established. A justiciable cause may be shown in these instances by the relationship of the parties concerned with the application of the law, and there need not be an actual controversy or violation of the ordinance to give one standing. It was held in the first paragraph of the syllabus in *Peltz* v. *South Euclid* (1967), 11 Ohio St. 2d 128 [44 O.O. 2d 129], that:

"Where a municipal ordinance imposing criminal penalties upon a contemplated act will be enforced against a person if he proceeds with that act, such person has standing to test the validity, construction and application of such ordinance by an action for declaratory judgment, and it is unnecessary to demonstrate the existence of an actual controversy for such a person to incur a violation of the ordinance. (Section 2721.03, Revised Code.) (*Wilson* v. *Cincinnati,* 171 Ohio St. 104 [12 O.O. 2d 129], approved and followed.)"

The Ohio declaratory judgment sections are supportive of the claimant's right to bring such an action claiming an affirmative position as to the statute or law. R.C. 2721.02, in pertinent part, states that:

"* * * The declaration may be either affirmative or negative in form and effect. Such declaration has the effect of a final judgment or decree."[1]

---

[1] R.C. 2721.02 is as follows:

"Courts of record may declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding is open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect. Such declaration has the effect of a final judgment or decree."

The broad general authority to test the construction of a law is to be found in R.C. 2721.03, which in part states that:

"Any person interested * * * may have determined any question of construction or validity arising under such * * * statute * * * and obtain a declaration of rights, status, or other legal relations thereunder."[2]

As to the merits of this matter, we feel that the reasoning and discussion as set forth in the opinions of Common Pleas Judge James J. McMonagle and the then Court of Appeals Judge Blanche Krupansky, are quite determinative of this case, and the author of this opinion shall liberally refer to the contents of those opinions.

We hold that both the Court of Common Pleas and the Court of Appeals quite correctly determined that since this case involved an interpretation of a statute concerning trafficking of obscene materials, no First Amendment rights of free speech were involved. It therefore follows that since no fundamental right or suspect classification is involved in the instant presentation, the test to determine whether R.C. 2907.35(C) is violative of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution is whether the classification created by this section bears a rational relation to a legitimate state interest served by the legislation. *Ohio Bureau of Employment Services* v. *Hodory* (1977), 431 U.S. 471, 489.

The lower court opinions point out that the classification created by the instant statute is clearly defined in the statute itself as encompassing motion picture projectionists, acting within the scope of their employment who have no managerial responsibility or financial interest in their place of employment, other than wages.

The appellants present to this court, as they did in the courts below, a number of interests which they claim to be legitimate state interests rationally related to the classification created by R.C. 2907.35(C), and also present a number of alleged distinctions between projectionists and other non-managerial, non-interested employees of motion picture theaters.

The appellants first raise the argument that the nature of their function within the theater sets them apart from other non-managerial, non-financially interested employees. Specifically, appellants point out that projectionists in the city of Cleveland must be licensed, and that they are members of a specific motion picture operators union, *i.e.*, Local 160, in Cleveland. The appellants' argument continues to the effect that as members of the union they are

---

[2] R.C. 2721.03 is as follows:

"Any person interested under a deed, will, written contract, or other writing constituting a contract, or whose rights, status, or other legal relations are affected by a constitutional provision, statute, rule as defined in section 119.01 of the Revised Code, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under such instrument, constitutional provision, statute, rule, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

"The testator of a will may have the validity of the will determined at any time during his lifetime pursuant to sections 2107.081 to 2107.085 of the Revised Code."

parties to the collective bargaining agreements entered into by the union and the theaters in the Cleveland area. Further, that under such agreements the projectionists are assigned to the various theaters on the basis of need and availability and, as such, are not permanent employees of any one theater and may be involuntarily required to work at a theater showing obscene films.

We must disagree. We do not view the projectionists as being any more involuntary employees than any other employee who works in theaters showing pictures that may be classified as obscene. The projectionists are involuntary employees only to the extent that they wish to keep their jobs at that particular establishment. It follows that other employees are similarly involuntary employees only insofar as they wish to keep their jobs at that particular theater showing these movies. There is a real degree of choice in the location of employment.

Further, we hold that the fact that the employee projectionist is a union member and assigned to a given theater by way of union hall assignment does not justify the classification contained in R.C. 2907.35(C). The continuance, or maintenance, of the existing contract arrangements between the projectionists' union and the various theaters does not rise to the status of a legitimate state interest.

The appellants also argue that, as the projectionists of this filmed material, they are dissimilarly situated from other non-managerial, non-financially interested employees, since projectionists by the nature of their function in the theater possess knowledge of the character of the films being shown, this knowledge being an essential element of the crime of pandering obscenity. Further, it is argued that since other employees do not necessarily possess such knowledge, the latter may avail themselves of a defense to a charge not available to projectionists.

It is true that only persons "with knowledge of the character of the material or performance involved" can be convicted under R.C. 2907.32. However, under R.C. 2907.35(A)(2), a person is presumed to have such knowledge "if he has actual notice of the nature of such material or performance, whether or not he has precise knowledge of its contents."

We believe that it cannot be successfully argued that there is any real differential among the employees of a theater as to the knowledge of the character of the material or performance involved for purposes of the statute. A projectionist who must view the film as it is being shown would normally have the precise knowledge of the film's contents, but can it be reasonably argued that the other employees of that theater would not have actual notice of the nature of the material or performance. We think not, particularly in view of the rather explicit material shown and the written word and art work presented in newspapers and on theater marquees to publicize such motion picture production.

Appellants' argument also encompasses First Amendment considerations to the effect that projectionists, absent the exemption of R.C. 2907.35(C), would be forced to either censor films as they were being shown or suffer the

consequences of criminal prosecution. This, as argued by appellants, would result in a chilling effect on the First Amendment exercise of free speech. This argument has little sound basis in the view of the majority of this court as it is difficult to believe that management would permit any projectionist to act as a one-man censor board to edit or delete any portions of the film to be shown to the audience.

Further, as to this argument, no projectionist is required by law to remain in the employment of any theater showing pornographic films which would by such continued employment force the employee to make any such censorship determination. To comply with the law, and remove himself from any potential source of adverse encounter with the law, a motion picture projectionist need only find employment in the less volatile areas of the industry. The law prohibiting the pandering of obscenity is a valid exercise of the General Assembly's jurisdiction to enact laws in the interest of the health, safety and morals of the general public. The fact that this section of law may adversely affect a person's employment, by itself, constitutes neither a valid defense to the crime nor a valid reason for exemption from prosecution.

We are aware that the Supreme Courts in other states, such as Washington and Rhode Island, have reached the opposite conclusion in considering this subject.[3] Conversely, there are other state Supreme Courts which have concluded that such statutes exempting projectionists from obscenity prosecution are unconstitutionally discriminatory.[4] In any event, we obviously are not bound by the holdings of courts of other jurisdictions on this issue. Our determination in this matter is based upon the law of this state as applied to the facts presented.

In our review of this questioned section of law, we are fully cognizant of the overriding principle that the presumption of constitutionality of a legislative act is very strong, and that the challenge must establish beyond a reasonable doubt that the statute is unconstitutional. *Ohio Public Interest Action Group* v. *Pub. Util. Comm.* (1975), 43 Ohio St. 2d 175 [72 O.O. 2d 98]; *State, ex rel. Jackman,* v. *Court of Common Pleas* (1967), 9 Ohio St. 2d 159 [38 O.O. 2d 404]; *State, ex rel. Dickman,* v. *Defenbacher* (1955), 164 Ohio St. 142 [48 O.O. 50].

In such a context we have fully considered and analyzed the exemption contained in R.C. 2907.35(C) as well as the arguments presented by appellants that there are legally acceptable differentials in the classification between projectionists and other non-managerial employees having no financial interest in the establishments for which they are employed. After such a review, we conclude that there is no legitimate state purpose which is served by the classification created in R.C. 2907.35(C). Therefore, we hold that the exemp-

---

[3] See *State* v. *J-R Distributors, Inc.* (1973), 82 Wash. 2d 584, 603-604, 512 P. 2d 1049; *State* v. *Lesieure* (R.I. 1979), 404 A. 2d 457, 464.

[4] See *Wheeler* v. *State* (1977), 281 Md. 593, 598-599, 380 A. 2d 1052; *State* v. *Luck* (La. 1977), 353 So. 2d 225, 232.

tion of motion picture projectionists from prosecution under R.C. 2907.31 and 2907.32, contained in R.C. 2907.35(C), is violative of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

Accordingly, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., COOK, SWEENEY, LOCHER and PALMER, JJ., concur.

C. BROWN, J., dissents.

COOK, J., of the Eleventh Appellate District, sitting for W. BROWN, J.

PALMER, J., of the First Appellate District, sitting for KRUPANSKY, J.

CLIFFORD F. BROWN, J., dissenting. In arriving at today's decision, the majority ignores fundamental principles of constitutional law and the standard of review courts are obliged to follow in determining constitutional issues.

The majority refers to the "unusual, if not unique" procedural posture of this case and goes on to observe that it is "inclined to have some question as to the firmness of the ground upon which the city of Cleveland based its failure to enforce * * * [R.C. 2907.35(C)] as written and adopted by the General Assembly." This concern is indeed justified. Instead of enforcing a duly enacted legislative pronouncement by which they are bound, Cleveland's prosecuting authorities began to arrest and prosecute projectionists despite the specific statutory exemption contained in R.C. 2907.35(C). By sanctioning this course of conduct, the majority, in clear contravention of accepted constitutional principles, gives municipal authorities the power to disregard state statutes of which they do not approve.

Any discussion as to the validity of R.C. 2907.35(C) must begin with the presumption of constitutionality afforded all legislative enactments.

As was succinctly stated in paragraph one of the syllabus in *State, ex rel. Dickman,* v. *Defenbacher* (1955), 164 Ohio St. 142 [57 O.O. 134]:

"An enactment of the General Assembly is presumed to be constitutional, and *before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.*" (Emphasis added.) See, also, *State, ex rel. Swetland,* v. *Kinney* (1982), 69 Ohio St. 2d 567, 573 [23 O.O.3d 479]; *State* v. *Saurman* (1980), 64 Ohio St. 2d 137, 138 [18 O.O.3d 367]; *State* v. *Renalist, Inc.* (1978), 56 Ohio St. 2d 276, 278 [10 O.O.3d 408]; *State, ex rel. Jackman,* v. *Ct. of Common Pleas* (1967), 9 Ohio St. 2d 159, 161 [38 O.O.2d 404].

Thus, only "when it clearly appears that there has been a gross abuse of * * * [legislative] discretion in undoubted violation of some state or federal

constitutional provision" will a legislative judgment be nullified. *Williams* v. *Scudder* (1921), 102 Ohio St. 305, at paragraph four of the syllabus.

The challenge to the constitutionality of R.C. 2907.35 (C) is that it creates a classification in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, in that it distinguishes between motion picture projectionists who have no managerial responsibility or financial interest in their place of employment from other non-managerial, disinterested employees of establishments which exhibit material which may be obscene.[5] However, the mere fact that the statutory exemption does not include employees who are not projectionists does not, in and of itself, make it unconstitutional.[6] As long as all within the given class are treated equally, there is no violation of the Equal Protection Clause simply because the classification excludes those who might well have been included. *State, ex rel. Burton,* v. *Greater Portsmouth Growth Corp.* (1966), 7 Ohio St. 2d 34 [36 O.O.2d 19]; *Heath* v. *Westerville Bd. of Education* (S.D. Ohio E.D. 1972), 345 F. Supp. 501; *Alkire* v. *Cashman* (S.D. Ohio E.D. 1972), 350 F. Supp. 360; *Porter* v. *Oberlin* (1965), 1 Ohio St. 2d 143, 152 [30 O.O.2d 491]; *Xenia* v. *Schmidt* (1920), 101 Ohio St. 437. Rather, under the traditional equal protection test, unequal treatment of classes of persons by a state is valid if the state can show that any rational or reasonable basis exists for the inequality. *Bd. of Edn.* v. *Walter* (1979), 58 Ohio St. 2d 368 [12 O.O.3d 327], certiorari denied 444 U.S. 1015; *State, ex rel. Clark,* v. *Brown* (1965), 1 Ohio St. 2d 121. "Within the limits of those restrictive rules, a legislative body has a wide measure of discretion." *State* v. *Buckley* (1968), 16 Ohio St. 2d 128 [45 O.O. 2d 469], at paragraph three of the syllabus; *Porter* v. *Oberlin, supra,* at paragraph two of the syllabus; *Xenia* v. *Schmidt, supra.* As this court stated in *State, ex rel. Lourin,* v. *Indus. Comm.* (1941), 138 Ohio St. 618, 619-620 [21 O.O.3d 490]:

---

[5] Paradoxically, the very class of persons the challenged law purportedly discriminates against were before this court only recently in *State* v. *Burgun* (1978), 56 Ohio St. 2d 354 [10 O.O.3d 485]. At that time, this court refused to even grant these supposedly aggrieved parties standing to contest the constitutionality of R.C. 2907.35(C). Today, the majority holds the same parties have been denied equal protection of the law.

[6] In upholding the constitutionality of a statute which distinguished scrap yards from junk yards, this court cited with approval the following language contained in *Central Lumber Co.* v. *South Dakota* (1912), 226 U.S. 157, 160:

"* * * If a class is deemed to present a conspicuous example of what the legislature seeks to prevent, the Fourteenth Amendment allows it to be dealt with although otherwise and merely logically not distinguishable from others not embraced in the law." *State* v. *Buckley* (1968), 16 Ohio St. 2d 128, at 134 [45 O.O.2d 469].

This concept clearly applies to the present case in that the legislature has specifically and unambiguously exempted "motion picture projectionists" from prosecution under R.C. 2907.31 and 2907.32. R.C. 2907.35(C).

"Neither the state nor the federal constitutional provisions guaranteeing uniformity and equal protection of the laws deprives the Ohio General Assembly of a broad power of classification and differentiation of persons and subject matter in legislative enactments. * * * 'It is only when such attempted classification is arbitrary and unreasonable that the court can declare it beyond legislative authority.' " (Citations omitted.)

Our focus, then, in determining the constitutionality of R.C. 2907.35(C) is whether there is "any conceivable state of facts" which would have justified the General Assembly in distinguishing motion picture projectionists from other employees and thus exempting them from the operation of Ohio's obscenity laws. *Allied Stores of Ohio, Inc.* v. *Bowers* (1959), 358 U.S. 522, 528 [9 O.O.2d 321]. See, also, *Ohio Bureau of Employment Services* v. *Hodory* (1977), 431 U.S. 471. Appellants have offered several reasonable bases upon which the legislature might have created this classification, any one of which would be sufficient to uphold the constitutionality of R.C. 2907.35(C).

First, an obvious and legitimate line is drawn between projectionists and other non-managerial and disinterested employees in that projectionists are not voluntary "employees" of any given theater. Rather, they are assigned to different theaters by their union.[7] Second, unlike other employees, they must obtain a license in order to operate motion picture machines and thus practice their profession. Section 693.07 of the Codified Ordinances of the city of Cleveland.[8] Third, the projectionist is the only disinterested employee who is responsible for performing certain duties aimed at the protection and safety of the theater patrons.[9] Fourth, unlike other non-managerial employees, projectionists are in the position of completely preventing a motion picture from

---

[7] In discarding this factor as one upon which the legislature could have legitimately based R.C. 2907.35(C), the majority states: "The continuance, or maintenance, of the existing contract arrangements between the projectionists' union and the various theaters does not rise to the status of a legitimate state interest."

This is not a proper application of the appropriate constitutional test, however. To reiterate, the question is not whether the *projectionists* have a legitimate state interest deserving of protection, but whether there is any conceivable reason upon which the *legislature* could have created the classification.

[8] Section 693.07 of the Codified Ordinances of the city of Cleveland reads as follows:

*"Only licensed picture machine operators shall be employed or permitted to operate any picture machine,* unless exhibited by and incidental to the purposes of any charitable, religious, benevolent or public and private educational facilities. (Ord. No. 191-70, passed June 1, 1970. Effective June 4, 1970)." (Emphasis added.)

[9] In addition to the licensing requirement contained in Section 693.07 of the Codified Ordinances of the city of Cleveland, Chapter 693 contains other provisions which outline certain safety procedures to be followed in the projection booth. *E.g.,* Section 693.04 (requiring that all projectors using combustible film be equipped with non-combustible magazines and a shutter in front of the projector's condensors which can be instantly closed by the operator); Section 693.05 (requiring that all film not actually in the projector be kept in covered metal boxes); Section 693.06 (requiring that all hot carbons removed from the projector be deposited in a metal receptacle with a self-closing hinged cover).

being shown. As projectionists can effectively prohibit the exhibition of a questionable film, the exemption is necessary to avert the danger that a protected and nonobscene film will be suppressed.[10] Finally, projectionists, due to the nature of their jobs, do not have available to them certain legal defenses which are available to other disinterested employees.[11]

Whether this court believes that the distinction is valid is of no import. Our concern is whether there is "any conceivable state of facts" upon which the *legislature* could base its decision to so distinguish.

It is undisputed that the state has a legitimate interest in regulating obscenity. The extent to which it chooses to regulate it, however, is a matter for the General Assembly. Moreover, inasmuch as there is no common law obscenity — and, indeed, no common law crime[12] — it is for the legislature to declare what actions in this area constitute criminal conduct. Our role is to determine whether this is a legitimate exercise of discretionary power. Today's decision, however, not only establishes a common law crime, but disregards the presumption of constitutionality afforded legislative enact-

---

Clearly these duties call for continuing supervision by the projectionist. Without the exemption contained in R.C. 2907.35(C), however, the projectionist would be subject to prosecution under R.C. 2907.31 which pertains to the dissemination of matter harmful to juveniles. He would thus be required to leave his position in the booth in order to determine if minors were present in the audience.

[10] If the projectionists were not exempt from criminal liability, they would be forced to make subjective and editorial decisions as to the possible obscene content of any given film. The fear of possible criminal sanctions would likely result in the projectionist erring on the side of suppressing protected speech, thus creating a "chilling effect." Were the film to be eventually adjudged obscene and the projectionist had not suppressed it, he would be subject to prosecution under R.C. 2907.32.

Indeed, the majority has recognized the predicament that invalidation of R.C. 2907.35(C) would cause when it observed: "[I]t is difficult to believe that management would permit any projectionist to act as a one-man censor board to edit or delete any portions of the film to be shown to the audience."

[11] A projectionist is in the peculiar position of necessarily viewing a motion picture for focusing and other purposes required by his employment thereby making it impossible for him to raise the defense of lack of "knowledge of the character" of the film if confronted with prosecution under R.C. 2907.31 or 2907.32.

In response to this contention, the majority states: "We believe that it cannot be successfully argued that there is any real differential among the employees of a theater as to the knowledge of the character of the material or performance involved for purposes of the statute * * * *particularly in view of the rather explicit material shown and the written word and art work presented in newspapers and on theater marquees to publicize such motion picture production.*" (Emphasis added.)

This suggests that projectionists are obliged to speculate as to the suitability of any given film on the basis of its promotional literature and separate "hype" from factual accounting of a film's content or be held legally responsible if the film in question is ultimately adjudged "obscene."

[12] See R.C. 2901.03(A) which states as follows:

"No conduct constitutes a criminal offense against the state unless it is defined as an offense in the Revised Code."

ments, and, in effect, shifts the burden of proof to the General Assembly to justify its actions.[13]

Underlying today's holding is the mistaken belief that a vote of un-constitutionality in this case is a vote against obscenity. While eliminating obscenity is certainly a laudable goal, it is not within the power of this court to rewrite legislative enactments. A judiciary should not sit as a super legislature to judge the wisdom or desirability of legislative policy determina-tions.[14] Nevertheless, the majority has done precisely this in substituting its judgment for the General Assembly's.

The General Assembly, and not this court, is empowered with the respon-sibility for determining how to combat obscenity. It is our duty to decide whether the disputed classification has any rational basis — not whether it comports with this court's perception of how the fight against obscenity is to be waged. I am satisfied that the instant classification is reasonable enough to meet the low level of judicial review traditionally afforded non-suspect classifications. See *Vostack v. Axt* (S.D. Ohio E.D. 1981), 510 F. Supp. 217 [22 O.O.3d 360]; *Holloway v. Brown* (1980), 62 Ohio St. 2d 65 [16 O.O.3d 47]; *Massachusetts Bd. of Retirement v. Murgia* (1976), 427 U.S. 307; *Dandridge v. Williams* (1970), 397 U.S. 471; *Breard v. Alexandria* (1951), 341 U.S. 622 [46 O.O. 74]. In short, I cannot acquiesce in an attempt to elevate moralistic pro-nouncements to the status of enduring constitutional principles. I therefore respectfully dissent.

---

[13] The following excerpt exhibits the attempt by this court to switch the burden of proof: "The fact that this section of law may adversely affect a person's employment, by itself, constitutes *neither a valid defense to the crime nor a valid reason for exemption from prosecution.*" (Em-phasis added.) See, also, fn. 6, *supra,* and the quote contained therein.

[14] As Chief Justice John Marshall observed in *Fletcher* v. *Peck* (1810), 6 Cranch (10 U.S.) 87, 128:

"The question, whether a law be void for its repugnancy to the constitution, is, at all times, a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative, in a doubtful case. The court, when impelled by duty to render such a judgment, would be unworthy of its station, could it be unmindful of the solemn obligations which that station imposes."

See, also, the opinion of Chief Justice Waite in *Sinking Fund Cases* (1878), 99 U.S. 700, 718, in which he stated:

"One branch of the government cannot encroach on the domain of another without danger. The safety of our institutions depends in no small degree on a strict observance of this salutary rule."

Both of the above-quoted excerpts were cited with approval by Justice Krupansky in *State, ex rel. Swetland,* v. *Kinney, supra,* at pages 575-576.