VOINOVICH, GOVERNOR, ET AL. *v.* FERGUSON, AUDITOR, ET AL.

[Cite as *Voinovich v. Ferguson* (1992), 62 Ohio St.3d 1224.]

(No. 91–1882—Submitted January 8, 1992—Decided January 13, 1992.)

This cause is pending in this court on the filing of an amended complaint for declaratory judgment and related relief. Upon consideration of the motions to dismiss of defendants Thomas E. Ferguson, Barney Quilter and Lee I. Fisher, and the demand for trial by jury of defendants Ferguson and Quilter,

IT IS ORDERED by the court that said motions to dismiss and the demand for trial by jury be, and the same are hereby, overruled.

MOYER, C.J., HOLMES, DOUGLAS and MILLIGAN, JJ., concur.

SWEENEY, H. BROWN and RESNICK, JJ., dissent and concur in part.

JOHN R. MILLIGAN, J., of the Fifth Appellate District, sitting for WRIGHT, J.

This cause is pending in this court on the filing of an amended complaint for declaratory judgment and related relief.

IT IS ORDERED by the court, *sua sponte*, that pursuant to Civ.R. 12(A) and Civ.R. 13, defendants Thomas E. Ferguson, Barney Quilter and Lee I. Fisher shall file answers to the amended complaint, and may file counterclaims, on or before January 27, 1992.

IT IS FURTHER ORDERED by the court that the parties shall file briefs on or before January 27, 1992, on the following issue: the ability of counterclaims to be independently adjudicated, pursuant to Civ.R. 13(I) and Civ.R. 42(B) or otherwise, should the plaintiffs' action be dismissed.

SWEENEY, DOUGLAS, H. BROWN and RESNICK, JJ., concur.

MOYER, C.J., HOLMES and MILLIGAN, JJ., dissent.

JOHN R. MILLIGAN, J., of the Fifth Appellate District, sitting for WRIGHT, J.

MOYER, C.J., concurring in part and dissenting in part. In approving the entry overruling defendants' motions to dismiss plaintiffs' amended complaint, I agree with the analysis of the issue regarding plaintiffs' standing as stated by Justice Holmes and Judge Milligan.

I dissent from the entry approved by the majority that delays our determination of the merits in this matter by requiring further briefing on the issue of the survival of a counterclaim if a complaint or amended complaint is dismissed (which has not occurred here).

All of those, both Democrats and Republicans, who will seek election to the Ohio House of Representatives and the Ohio Senate in the elections to be held this year deserve a timely and expeditious determination of the Ohio constitutional issues presented to this court. The delay already caused and the delay that will be caused by the filing of more briefs, not until January 27, on an issue that is not even relevant in view of our disposition of defendants' motions to dismiss, will make it very difficult for this court to resolve the issues arising under the Ohio Constitution that are before us prior to the February 20, 1992 filing deadline.

The parties have previously been able to meet expedited briefing schedules in this court and in the federal court in order that Ohio may have an orderly election of its state legislators in 1992. They can certainly continue to comply with such orders.

I would not require further briefing on procedural issues; would set an expedited time schedule for the filing of answers, counterclaims, and briefs; and proceed to exercise our constitutional duty to resolve the state constitutional issues presented in the pleadings.

HOLMES, J., concurring in part and dissenting in part.

I am in agreement that the motions of defendants Ferguson, Quilter and Fisher to dismiss this action and motions of Ferguson and Quilter for a jury trial should be overruled, and would accordingly approve such an entry. However, I am in disagreement with those portions of the entry in which the majority in essence questions (if not denies) the standing of the plaintiffs Voinovich, Taft and Aronoff to bring this action.

The defendants Ferguson and Quilter have from the outset of this proceeding not only questioned the standing of these plaintiffs, but also questioned the jurisdiction of this court to entertain this action which has been presented in the form of a declaratory judgment action. Further, the defendants claim that this matter may not be entertained here, in that there has been no justiciable case or controversy presented to this court. These are the issues that the majority of this panel, by this entry, concludes are in need of additional briefing before this court will be in position to decide the merits. With this I disagree in that there has been ample briefing before this court to lawfully conclude that not only do the plaintiffs have standing to bring this action, but there is indeed a justiciable controversy presented to this court, and this court does indeed have jurisdiction in this instance to entertain this action sounding in declaratory judgment.

At the outset, it is my position that this court does have jurisdiction in this matter to entertain a declaratory judgment action, and the power to award declaratory relief herein. The fount of such authority is to be found in

Section 13, Article XI of the Ohio Constitution, which grants to the Supreme Court not only *original* but *exclusive* jurisdiction in all cases arising under Article XI which are concerned with the subject of apportionment. Such section, in pertinent part, is as follows:

"The supreme court of Ohio shall have exclusive, original jurisdiction in all cases arising under this Article. In the event that any section of this Constitution relating to apportionment or any plan of apportionment made by the persons responsible for apportionment, by a majority of their number, is determined to be invalid by either the supreme court of Ohio, or the supreme court of the United States, then notwithstanding any other provisions of this Constitution, the persons responsible for apportionment by a majority of their number shall ascertain and determine a plan of apportionment in conformity with such provisions of this Constitution as are then valid, including establishing terms of office and election of members of the general assembly from districts designated in the plan, to be used until the next regular apportionment in conformity with such provisions of this Constitution as are then valid."

Although generally appellate courts, inclusive of this court, do not entertain original actions seeking declaratory judgments, this case presents the unique situation in which by Constitution this court has been empowered with exclusive jurisdiction over actions concerning the constitutionally provided apportionment process. This exclusive jurisdiction does not provide for the specific remedy or manner by which this court shall proceed to make its determination in these controversies. However, this court does have the *sua sponte* power to select the appropriate form of action and manner in which it proceeds to carry out this constitutionally granted exclusive jurisdiction. The appropriate action to determine issues presented to this court under Article XI may well be by way of declaratory judgment.

Within the spirit of the Declaratory Judgment Act, an action for declaratory judgment may be entertained by a court, in the exercise of its sound discretion, where a justiciable controversy exists between adverse parties, and speedy relief is necessary to the preservation of rights which may otherwise be impaired or lost. *Burger Brewing Co. v. Liquor Control Comm.* (1973), 34 Ohio St.2d 93, 63 O.O.2d 149, 296 N.E.2d 261, paragraph one of the syllabus. See, generally, *Corron v. Corron* (1988), 40 Ohio St.3d 75, 531 N.E.2d 708. A declaratory judgment action seeking the construction of a statute or a law may be maintained without the plaintiff either attacking or supporting the validity of such law. *Eudela v. Rogers* (1984), 9 Ohio St.3d 159, 9 OBR 448, 459 N.E.2d 539. Accordingly, in *Pack v. Cleveland* (1982), 1

Ohio St.3d 129, 131, 1 OBR 166, 168, 438 N.E.2d 434, 437, I, on behalf of the majority, stated:

"Where a complainant asserts the validity of a law in a declaratory judgment proceeding and shows that he is affected by, or materially interested in, a statute or ordinance, and that he has a justiciable cause concerning such law, the litigant's standing may be established. A justiciable cause may be shown in these instances by the relationship of the parties concerned with the application of the law, and there need not be an actual controversy or violation of the ordinance to give one standing."

There are indeed a real controversy and justiciable issues between the parties here. First, it must be noted that the plaintiffs are the Republican majority members of the body constitutionally provided by way of Section 1, Article XI for the apportionment of the state for membership in the General Assembly. This body is referred to as the "Apportionment Board." After convening such group upon call by the Governor, an apportionment plan was formulated by the plaintiffs and published by the Governor on October 5, 1991, as required by Section 1, Article XI. The instant case involves the constitutionality of such plan. The plaintiffs have authored such plan and feel that they have devised such to the best of their ability within the framework of Article XI. However, they bring this action stating that there exists some question of conflict of such plan and certain provisions of Article XI, and that there presently exists a real, substantial and justiciable dispute and controversy between the parties concerning the correct construction of Sections 3, 4, 7, 8, 9, 10 and 11, Article XI of the Ohio Constitution under the plan and the facts of this case.

The plan having been adopted and published, there would seem to be no question that there is more than an advisory opinion sought from this court. What is sought is a determination of the constitutionality of this plan by the plaintiffs. The defendant Henry and the defendant Drake have filed answers and counterclaims herein seeking the declaration of such plan, at least as it affects their senatorial districts, to be held unconstitutional.

The defendants Ferguson and Quilter purportedly filed an answer and counterclaim to the plaintiffs' first complaint (which consisted of filings that were originally made after removal to the federal district court). In such counterclaim these defendants attacked the constitutionality of the plan.[1]

---

1. Following this court's order of November 20, 1991 granting plaintiffs' motion to amend their complaint, defendants Ferguson and Quilter withdrew their purported answer and counterclaim, first amended answer and counterclaim, and motion for leave to file a second amended answer and counterclaim. Defendants Ferguson and Quilter, in conscious disregard of this court's order of November 20, 1991, have failed to answer plaintiffs' amended complaint.

Furthermore, as evidencing that an actual controversy exists between these parties concerning this apportionment plan, it may be noted that there is at least one action pending in federal court brought by these defendants Ferguson and Quilter, as well as other electors throughout the state, attacking the apportionment plan as presented by these plaintiffs as being invalid under the Ohio and federal Constitutions.[2]

It should be clear that there, in fact, exists an actual controversy. There is little legal reality in the assertion that no controversy exists between the plaintiffs and the defendants, while at the same time pursuing their claims and cross-claims against these plaintiffs in other forums.

Defendant Fisher, the Attorney General of Ohio, as well as the defendants Ferguson and Quilter, also assert that the plaintiffs lack standing to bring this action. This argument I believe to have no merit. First, the plaintiffs bring this action not only in their official capacities as members of the so-called Apportionment Board, but also as qualified electors of the state of Ohio. The plaintiffs in their official capacities are the persons responsible for the apportionment of this state for members of the General Assembly, and as such have a direct and immediate interest in supporting the validity of the plan they adopted. Exemplary of such interests of the plaintiffs in the apportionment plan may be shown by again referring to the federal actions filed questioning the validity of the plan. In all such actions these plaintiffs were named as defendants, and as such were expected to defend the validity of the plan.

Further, the plaintiffs have a real stake and standing in this plan as questioned in that if, after a review upon the merits of such plan, it is held by this court to be in conflict with Sections 3, 4, 7, 8, 9, 10 or 11, Article XI of the Ohio Constitution, the "Apportionment Board" or a majority thereof must, pursuant to Section 13, Article XI, again convene to "ascertain and determine a plan of apportionment in conformity with such provisions of this Constitution as are then valid * * *."

Accordingly, the Constitution has placed an additional and continuing concern and burden upon the members of the "Apportionment Board" to respond to any judicial construction of the plan finding portions thereof unconstitutional or invalid. These concerns, and potential burdens of additional voluminous work upon a new plan, provide additional tangible evidence of the standing of these plaintiffs.

One last commentary may be made relative to the standing of these plaintiffs in this matter. Plaintiffs do have a personal stake in the outcome of

2. *Quilter v. Voinovich* (pending), N.D.Ohio No. 5:91CV2219, unreported.

this case as they have been named as defendants in the *Quilter* case, in which the plaintiffs herein have sought, *inter alia,* monetary relief in the form of attorney fees and costs under Sections 1983, 1988 and 1973*l* (e), Title 42, U.S.Code. One of the alleged violations in that case is of Article XI of the Ohio Constitution. Given that the United States Supreme Court has recently concluded that public officials may be held personally liable under Section 1983, *Hafer v. Melo* (1991), 502 U.S. ——, 112 S.Ct. 358, 116 L.Ed.2d 301, plaintiffs have a personal stake in this litigation commenced for the purpose of establishing that they acted properly under and correctly interpreted Article XI of the Ohio Constitution. Clearly, therefore, plaintiffs have standing to maintain this action.

The parties plaintiff to this matter, as well as the parties defendant, Ferguson, Quilter and Fisher, have heretofore filed briefs on all the preliminary issues including the jurisdiction of this court in declaratory judgment actions, whether or not a justiciable controversy exists, and the standing of the plaintiffs to bring this action. There is no need to brief these matters further. To increase the bulk of material before us here not only enlarges this legal gargantuan creature, but extends the time within which a final determination may be made upon the merits of the important constitutional questions presented. By law in Ohio, election cases are given priority by the courts in their determinations and this is because of specified filing dates for candidacy for elective offices. The filing date for candidates for the November 1992 elections is February 20, 1992, so it becomes clear the need for rather immediate action by this court to determine the state constitutional issues presented by the plaintiffs, as well as any that might be presented through counterclaims of defendants Ferguson and Quilter.

Therefore, I would deny the motions of defendants Ferguson, Quilter and Fisher to dismiss the action, and would deny the motions of Ferguson and Quilter for a jury trial hereof, but would not order additional briefing on the jurisdictional issues. I would permit the filing of answers by the defendants and cross-claims pursuant to the pertinent Civil Rules. Further, within the allowability of the timing of the Civil Rules, I would bring this matter on expeditiously to a determination upon the merits.

MILLIGAN, J., concurring in part and dissenting in part. The people of Ohio have invested specific, original, exclusive jurisdiction in the Ohio Supreme Court to resolve reapportionment cases. Section 13, Article XI of the Ohio Constitution.

The issue of whether the plaintiffs have standing (or whether there is a case or controversy) is rendered irrelevant by the purported filing of the answers and counterclaims which clearly request a determination of the unconstitution-

ality of a portion of the reapportionment plan adopted by the plaintiffs. Compare Civ.R. 17(A) which preserves a case for a reasonable time to engage the real party in interest.

Whether the original complaint is construed to be a complaint for declaratory judgment, or an answer to the counterclaims of defendants, this case is now a "case or controversy" within the exclusive jurisdiction of the Supreme Court.

The question of "standing" of plaintiffs is thus converted into an issue of proper parties. Inasmuch as any adverse determination on constitutionality must be remanded to the Apportionment Board, members of that board are clearly proper, if not necessary, parties. Civ.R. 19 and 20.

Article XI of the Ohio Constitution contemplates and anticipates the involvement of the state judiciary in the reapportionment process. Unlike many other administrative processes, this constitutional provision expects judicial scrutiny.

The state of Ohio should resolve its own territorial problems. This procedure is a response to the reality that legislative reapportionment inevitably changes the boundaries of legislative districts to the chagrin of some and the joy of others. Challenge thereto in the courts has become the uniform, anticipated practice. This provision of the Constitution should be interpreted to foster prompt judicial response, finality and certainty in the legislative elective process, and a fair and equitable playing field upon which the political aspirants are engaged.

In moving toward judgment, this court need not slavishly follow the Ohio Rules of Civil Procedure. This is a special, constitutional process as to which Civ.R. 1(B) eloquently speaks:

"These [civil] rules shall be construed and applied to effect *just results by eliminating delay, unnecessary expense and all other impediments to the expeditious administration of justice.*" (Emphasis added.)

Upon this posture of the case, I see no need for briefing or oral argument on procedural, prefatory matters.

I would overrule the motions to dismiss (either the entire case or the original complaint), overrule the motions for jury trial, overrule the request for briefing and hearing on questions of standing and "case or controversy," and establish a prompt schedule of completion of the briefs and trial upon the merits of the counterclaims and the complaint. The three-foot stack of documentation filed to date suggests preparation is largely complete.

ALICE ROBIE RESNICK, J., concurring in part and dissenting in part. Whether the plaintiffs have standing to bring this action is an issue properly before this

court, and has been fully briefed. After considering this issue, I find that the plaintiffs do not have standing to bring this action and therefore would grant the motions to dismiss on that basis.

I concur in the denial of the request for jury trial.

I would grant the defendants until January 27, 1992 to brief the issue as to whether their counterclaims survive the dismissal of the complaint. While this may cause a slight delay in the ultimate decision of this matter, we must all recognize the importance of this issue to the citizens of Ohio. Additionally, simply because this is a special constitutional process authorized to be performed by the Supreme Court under Section 13, Article XI of the Ohio Constitution, this process does not permit this court to disregard the Ohio Rules of Civil Procedure; rather, we should proceed in a reasonable and orderly manner.

SWEENEY and H. BROWN, JJ., concur in the foregoing opinion.