THE STATE, EX REL. SWETLAND, *v.* KINNEY, COMMISSIONER.

[Cite as State, ex rel. Swetland, v. Kinney (1982),
69 Ohio St. 2d 567.]

(No. 81-1250—Decided March 3, 1982.)

*Messrs. Forrester and Kovanda* and *Mr. John E. Forrester,* for relator.

*Mr. William J. Brown,* attorney general, and *Mr. Richard C. Farrin,* for respondent.

KRUPANSKY, J.   The issue to be decided herein is whether the definition of "preceding year" contained in Am. Sub. H. B. No. 50 conflicts with the meaning of that phrase in Section 2a,

Article XII of the Ohio Constitution, thus rendering Am. Sub. H. B. No. 50 unconstitutional. After considering the relevant facts we conclude Am. Sub. H. B. No. 50 is instrumental in effectuating the intent of Section 2a, Article XII of the Ohio Constitution, and therefore, we deny relator's request for a writ of mandamus.

It is a generally accepted premise that courts must interpret the Constitution broadly in order to accomplish the manifest purpose of an amendment. *State, ex rel. Turner,* v. *Fassig* (1916), 5 Ohio App. 479, 487. Furthermore, courts will attempt to reconcile constitutional conflicts with the following proposition in mind:

"In the interpretation of an amendment to the Constitution the object of the people in adopting it should be given effect; the polestar in the construction of the constitutional, as well as legislative, provisions is the intention of the makers and adopters thereof." *Castleberry* v. *Evatt* (1946), 147 Ohio St. 30, paragraph one of the syllabus.

In light of *Turner* and *Castleberry* it appears that our first task must be to (1) ascertain the motive behind the proposal of Issue I by the General Assembly and (2) to explore the intent of the voters of Ohio in approving the issue. In making this determination our inquiry must include more than a mere analysis of the words found in the amendment at issue. As stated by this court in *Cleveland* v. *Bd. of Tax Appeals* (1950), 153 Ohio St. 97, 103 (overruled on other grounds, *Denison University* v. *Bd. of Tax Appeals* [1965], 2 Ohio St. 2d 17):

"The purpose of the amendment, and the reasons for, and this history of its adoption, are pertinent in determining the meaning of the language used, for when the language is obscure or of doubtful meaning the court may, with propriety, recur to the history of the time when it was passed, to the attending circumstances at the time of adoption, to the cause, occasion or necessity therefor, to the imperfections to be removed or the mischief sought to be avoided and the remedy intended to be afforded."

Applying the reasoning of *Cleveland* to the facts of the instant action it is immediately apparent that "the imperfections to be removed or the mischief sought to be avoided" by Section 2a, Article XII, concerns the inequity of the practice of apply-

ing the tax reduction factors of R. C. 319.301 equally to residential and agricultural property and commercial and industrial property despite the fact that inflation has had a disparate impact on these two classes of property. While inflation has had a tremendous effect on the value of all real property in recent years, the most substantial impact has been on residential and agricultural real property as opposed to commercial and industrial real property. However, prior to the addition of Section 2a, Article XII, to the Ohio Constitution and the enactment of Am. H. B. No. 1238 and Am. Sub. H. B. No. 50, the tax reduction factors of R. C. 319.301 were applied equally to all real property. This system tended to overcompensate those classes of real property which inflated at lower levels (commercial and industrial) and undercompensate those classes of real property which inflated at more rapid rates (residential and agricultural).

The legislature was aware of the inadequacies of the existing tax reduction system and it was these imperfections which the General Assembly hoped to eradicate through its proposal of Issue I (addition of Section 2a to Article XII). A review of the ballot language to explain the effect the proposed constitutional amendment would have on the existing taxation system of the state makes the intent of the General Assembly even more apparent. As stated in the "Argument for the Proposed Amendment":

"The passage of Issue I will ensure fairer property tax relief for Ohio's homeowners and farmers. Without Issue I, business and industry in Ohio will continue to accrue unjustified tax relief at the expense of residential and farm property owners.

"Issue I will alter Ohio's Constitution to create two classes of property: 1) residential and agricultural property, and 2) all other property (to include commercial and industrial property). Creating these classes, *most importantly*, will permit residential and agricultural tax relief to increase proportionately to inflationary increases in residential and agricultural real estate. [Emphasis *sic*.]

" * * * Because the present Ohio Constitution requires uniform application of tax laws, general property tax relief is

granted across the board to all property owners, including business land-holders.

"When general property tax relief is granted uniformly to all property without respect to what inflation has meant to rising residential and agricultural tax bills, the residential property taxpayer ends up, unfairly, shouldering a greater share of the property tax burdens than does business. *Issue I will correct this* * * *. [Emphasis added.]

"Issue I will bring much needed reform in Ohio's system of property tax relief."

Clearly, Section 2a, Article XII, was proposed as an attempt to alleviate the unfair tax burden placed upon residential and agricultural real property owners. Both the General Assembly and the voters of Ohio intended the passage of Issue I to initiate a solution to the taxation dilemma of residential and agricultural real property owners.

Section 2a, Article XII, was not self-executing, however, and for this reason legislation had to be enacted to effectuate the new amendment. Am. Sub. H. B. No. 50 is such enabling legislation. Am. Sub. H. B. No. 50 is designed to ameliorate the effects inflation and the tax reduction factors have had on residential and agricultural real property owners in the last several years. As stated above, the intent of Section 2a, Article XII of the Ohio Constitution is to insure equality of treatment to real property owners in Ohio; the General Assembly's definition of "preceding year" in Am. Sub. H. B. No. 50 unquestionably furthers this intent.

Relator contends the definition of "preceding year" found in Am. Sub. H. B. No. 50 conflicts with the meaning of that phrase in Section 2a, Article XII; however, we fail to see even the slightest hint of conflict or inconsistency, especially since "preceding year" is nowhere defined in the text of the constitutional amendment. Constitutional provisions are intentionally cast in very general terms. This generality allows the legislature to promulgate more specific legislation to carry out the intricacies of the constitutional enactment. In the present action, for instance, we are confronted with a constitutional amendment which has as its general aim the revision of Ohio's real property taxation system to insure more equitable treatment among the real property owners of the state. In order to

implement the goal of this amendment, Am. H. B. No. 1238 and Am. Sub. H. B. No. 50 were enacted to further refine and delineate the workings of the system as amended.

This interaction between the Constitution and legislation was carefully reviewed by the court in *State, ex rel. Jackman, v. Court* (1967), 9 Ohio St. 2d 159, 161, 162, wherein it was stated:

" * * * The legal duty imposed upon the judiciary was succinctly stated in paragraph one of the syllabus in *State, ex rel. Dickman, v. Defenbacher, Dir.,* 164 Ohio St. 142 (1955):

" 'An enactment of the General Assembly is presumed to be constitutional, and *before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.*'

"That duty applies both to the General Assembly of Ohio and to the federal Congress. However, it should be noted that the federal Constitution is a *grant* of power to the Congress, while the state Constitution is primarily a *limitation* on legislative power of the General Assembly. It follows that the General Assembly may pass any law unless it is specifically prohibited by the state or federal Constitutions * * * . [Citations omitted.]

"An excellent summary of these principles of law was made by the court in *State, ex rel., v. Jones, Auditor,* 51 Ohio St. 492, 503, 504 (1894):

" 'In determining whether an act of the Legislature is or is not in conflict with the Constitution, it is a settled rule, that the presumption is in favor of the validity of the law. The legislative power of the state is vested in the General Assembly, and *whatever limitation is placed upon the exercise of that plenary grant of power must be found in clear prohibition by the Constitution.* The legislative power will generally be deemed ample to authorize the enactment of a law, unless the legislative discretion has been qualified or restricted by the Constitution in reference to the subject matter in question. If the constitutionality of the law is involved [sic] in doubt, that doubt must be resolved in favor of the legislative power. The power to legislate for all the requirements of civil government

is the rule, while a restriction upon the exercise of that power in a particular case is the exception. (Emphasis added.)"

Section 2a, Article XII, contains nothing which could be construed as a prohibition on the power of the General Assembly to legislate a provision such as Am. Sub. H. B. No. 50. Indeed, as stated above, since constitutional amendments are framed in general terms the General Assembly is totally cognizant of the fact that statutes must be enacted to implement the amendments—this is the theory behind "enabling legislation." Am. Sub. H. B. No. 50 simply defines a term, *i.e.*, "preceding year," which had not been defined in the constitutional amendment being effectuated. In the absence of a clear prohibition or limitation the General Assembly acted completely within its authority in promulgating this legislation.

Another recurring theme in our judicial system is based on the premise that courts must afford legislation a very strong presumption in favor of constitutionality. The history, as well as the continuing vitality of this tenet, was exhaustively reviewed by this court in *State, ex rel. Dickman,* v. *Defenbacher* (1955), 164 Ohio St. 142. The court in *Dickman* began by stating, at page 147:

"A regularly enacted statute of Ohio is presumed to be constitutional and is therefore entitled to the benefit of every presumption in favor of its constitutionality. This court has held enactments of the General Assembly to be constitutional unless such enactments are *clearly unconstitutional beyond a reasonable doubt.*" (Emphasis added.)

The court in *Dickman* continued:

"Paragraph four of the syllabus in *Williams* v. *Scudder,* 102 Ohio St., 305, 131 N. E., 481, states:

" 'The legislative judgment in this behalf will not be nullified except when it clearly appears that there has been a *gross abuse* of such discretion in *undoubted violation* of some state or federal constitutional provision.'

"In *State, ex rel. Durbin,* v. *Smith, Secy. of State,* 102 Ohio St., 591, 133 N. E., 457, the court, in a *per curiam* opinion, said:

" 'In the recent case of *City of Xenia* v. *Schmidt,* 101 Ohio St., 437, this court declared: "1. A legislative act is presumed in law to be within the constitutional power of the body making

it, whether that body be a municipal or a state legislative body. 2. That presumption of validity of such legislative enactment cannot be overcome unless it appear [sic] that there is a *clear conflict* between the legislation in question and some particular provision or provisions of the Constitution." In the opinion by Wanamaker, J., at page 443, the opinion of John Marshall, C. J., in the case of *Fletcher* v. *Peck,* 6, Cranch, 87, * * * is quoted with approval as follows: "The question, whether a law be void for its repugnancy to the Constitution, is, at all times, a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative, in a doubtful case. The court, when impelled by duty to render such a judgment, would be unworthy of its station, could it be unmindful of the solemn obligations which that station imposes. But it is not on slight implication and vague conjecture that the Legislature is to be pronounced to have transcended its powers, and its acts to be considered as void. The opposition between the Constitution and the law should be such that the judge feels a *clear and strong conviction of their incompatibility with each other."*

" 'And in *City of Xenia* v. *Schmidt,* at page 444, Judge Wanamaker again quotes from the opinion of Justice Washington in the case of *Ogden* v. *Saunders,* 12 Wheat., 213 (1827), as follows: "If I could rest my opinion in favor of the constitutionality of the law * * * on no other ground than this doubt so felt and acknowledged, that alone would, in my estimation, be a satisfactory indication of it. It is but a decent respect due to the wisdom, the integrity and the patriotism of the legislative body by which any law is passed, to presume in favor of its validity, until its violation of the Constitution is proved beyond a reasonable doubt. This has always been the language of this court when that subject has called for its decision * * *."

" 'Quoting again from the opinion of Chief Justice Waite in *Sinking Fund Cases,* 99 U. S. 700 (1878): "Every possible presumption is in favor of the validity of a statute, and this continues until the contrary is shown *beyond a rational doubt.* One branch of the government cannot encroach on the domain of another without danger. The safety of our institutions

576

depends in no small degree on a strict observance of this salutary rule." ' " (Emphasis added.)

Clearly the above-quoted excerpts exhibit how firmly entrenched in our judicial system is the sanctity of legislative enactments. Applying these principles to the case at bar it is immediately apparent that it has not been show "beyond a reasonable [or rational] doubt" that Am. Sub. H. B. No. 50 and Section 2a, Article XII of the Ohio Constitution are "clearly incompatible," nor do we feel a "clear and strong conviction" of their incompatibility. To the contrary, we find Am. Sub. H. B. No. 50 to be a valid effectuation of the intent of Section 2a, Article XII of the Ohio Constitution. In view of our findings, the writ of mandamus is denied.

*Writ denied.*

CELEBREZZE, C. J., W. BROWN, SWEENEY, LOCHER, PATTON and C. BROWN, JJ., concur.

PATTON, J., of the Eight Appellate District, sitting for HOLMES, J.