T.W. GROGAN COMPANY, APPELLEE, *v.* NORTHEAST OHIO REGIONAL SEWER DISTRICT, APPELLANT.

(No. 53171—Decided November 9, 1987.)

*C. Douglas Lovett* and *Isaac Schulz,* for appellee.
*David A. Shorr,* for appellant.

MARKUS, J. The defendant sewer district appeals from a declaratory judgment that its billing procedures violate the plaintiff building owner's constitutional right to equal protection. Legitimate government interests provide a rational basis for the challenged procedures, so they do not contravene the building owner's constitutional rights. Consequently, we reverse the trial court's judgment.

I

The plaintiff company owns and operates a large commercial office building which the defendant sewer district services with its sewer system. The sewer district is a governmental agency established pursuant to R.C. Chapter 6119. Ordinarily, it measures a customer's sewer usage by the quantity of water which the customer uses, according to the applicable water

department's meter. This practice recognizes that sewer customers typically deposit most water back into the sewer system as liquid waste. Of course, virtually every user disposes of some water outside the sewer system.

As an exception to its regular practice, the district allows some large water users to establish their sewer usage by metering the sewage itself. Although "actual use" customers pay added charges, they may find that procedure more economical if they dispose of large quantities of water elsewhere. For example, some large buildings evaporate substantial quantities of water in their massive air conditioning systems. This building owner claims that it loses eighty percent of the water it purchases in that manner. The sewer district admits that the building probably evaporates about twenty-nine percent of its water.

An "actual use" billing procedure increases the district's administrative expense, because it must install, monitor, and maintain separate sewage meters and accounting practices for such customers. Consequently, the district limits the availability of that exceptional procedure to customers who consume at least fifty thousand cubic feet of water yearly. The building owner does not challenge the reasonableness of that limitation, so we have no cause to question its propriety.

Since individual residences and small businesses rarely consume that quantity of water, those users can seldom employ "actual use" billing procedures. The district attempts to prevent multiple users from decreasing their sewerage charges by aggregating their water consumption through a single meter. Thus, the district seeks to treat similarly any buildings with multiple apartments, condominiums, or offices, whether they use separate or collective water meters.

The district denies "actual use" billing to multiple-unit buildings with central water meters, unless the average consumption per unit equals the required amount. It divides the building's total water consumption by the number of building units to determine whether the units use fifty thousand cubic feet yearly. Section 1.0809, Code of Regulations of the Northeast Ohio Regional Sewer District. It draws no distinction between buildings which lease units and those with separate condominium units. *Id.*

The plaintiff's building used 2,379,000 cubic feet of water for its one hundred sixty-four office tenants, or less than fifteen thousand cubic feet per unit. Some large commercial office buildings with similar total water consumption have many fewer units, so they consume more than fifty thousand cubic feet per unit. Unlike this plaintiff's building, those buildings may elect "actual use" billing, rather than regular water consumption billing.

## II

The trial court accepted the building owner's contention that eligibility for "actual use" billing cannot depend on the number of building units. The number of units in a building with central metering has no effect on the district's cost to provide sewage service for that building. Consequently, the building owner argued that eligibility for "actual use" billing on that basis denied equal protection by an arbitrary and irrational classification.

Like the Fourteenth Amendment to the federal Constitution, Section 2, Article I of the Ohio Constitution guarantees Ohioans the equal protection of the laws. *State, ex rel. Heller*, v. *Miller* (1980), 61 Ohio St. 2d 6, 8; 15 O.O. 3d 3, 4, 399 N.E. 2d 66, 67. However, neither the state nor the federal Constitution prevents a governmental

body from treating persons differently in appropriate situations.

Absent a suspect classification like race, religion, or alienage, the government need only show that its classification relates rationally to a legitimate governmental interest. *State, ex rel. Dayton Fraternal Order of Police Lodge No. 44,* v. *State Emp. Relations Bd.* (1986), 22 Ohio St. 3d 1, 6, 22 OBR 1, 5, 488 N.E. 2d 181, 185-186; *Goudreau* v. *Cleveland* (1985), 30 Ohio App. 3d 179, 181, 30 OBR 321, 322, 507 N.E. 2d 373, 375. Thus, the sewer district can constitutionally deny "actual use" billing to buildings with sufficiently more units, if that practice rationally serves a valid governmental interest.

The sewer district's three assigned errors all challenge the ruling that invalidated its billing practice. The district asserts that the disputed practice causes groups of units to share sewage system costs equitably with individual units. If so, the practice is constitutionally acceptable, despite resulting differences in charges which are unrelated to the district's cost for an individual customer's service.

Whether customer charges should spread the system's costs evenly rather than reflecting the cost to provide individual service is a policy issue. Although some may disagree with the district's policy choice, it remains a legitimate governmental interest. Courts accord legislatively authorized administrative regulations a strong presumption that they satisfy constitutional restrictions. *Roosevelt Properties Co.* v. *Kinney* (1984), 12 Ohio St. 3d 7, 13, 12 OBR 6, 11, 465 N.E. 2d 421, 427. Consequently, the building owner bears a heavy burden to deny that the district's classification is rational. *State, ex rel. Swetland,* v. *Kinney* (1982), 69 Ohio St. 2d 567, 573-576, 23 O.O. 3d 479, 483-485, 433 N.E. 2d 217, 221-223.

In this case, the challenged billing exception is available to less than one percent of all residential customers and very few small businesses. The exception for very large users, with disproportionate water disposal outside the sewers, does not preclude the district's continued efforts to distribute remaining costs equitably. If separate users could combine their water usage or metering to avoid the district's restriction, they might not share the burden of sewage costs equitably. Their potential preferential treatment could increase the cost of sewage for other small users.

Hence, the district can rationally seek to preclude combined usage or metering, to serve its legitimate governmental goal of distributing sewage costs evenly. Moreover, it can rationally treat all aggregate units of multiple users similarly, despite any differences in their legal relationships. A contrary rule might discriminate between (a) buildings that reflect total water expenses in rentals or condominium charges, (b) those which separately meter the water for each unit, (c) those that internally submeter the water for its units, and (d) those that charge back proportionate water costs to each unit.

Further, a rule which differentiates between buildings with tenants and those with condominium owners invites legal maneuvering for advantageous occupancy terms, when the total group consumes sufficient water. The courts do not determine whether the governmental agency has selected the most equitable classification. If the classification rationally seeks to accomplish a lawful governmental goal, the courts should not undertake quasi-legislative efforts to choose a "fairer" system. Cf. *Downing* v. *Cook* (1982), 69 Ohio St. 2d 149, 151, 23 O.O. 3d 186, 187, 431 N.E. 2d 995, 997.

The district rationally classifies ·

390

buildings according to the relative number of units for each building's total water consumption. That classification serves to prevent an abuse of the district's "actual use" exception for billing practices, which could distribute sewage costs inequitably. The mere fact that a regulation proves more advantageous for some users than others does not deny its constitutionality. Cf. *Goudreau* v. *Cleveland, supra,* at 181, 30 OBR 322, 507 N.E. 2d at 375; *Steele Hopkins & Meredith Co.* v. *Miller* (1915), 92 Ohio St. 115, 127, 110 N.E. 648, 651.

We sustain the sewer district's three assignments of error and reverse the trial court's judgment. We enter final judgment for the sewer district that the challenged billing procedure complies with the building owner's right to equal protection of the laws.

*Judgment reversed.*

KRUPANSKY, P.J., and DYKE, J., concur.