**[Cite as *State v. Anderson*, 2025-Ohio-1226.]**

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff-Appellant | : | Hon. Michael D. Hess, J. |
| | : | Hon. Jason P. Smith, J. |
| -vs- | : | |
| | : | Judges Hess and Smith |
| KEYLE D. ANDERSON | : | Sitting by Assignment by the |
| | : | Supreme Court of Ohio |
| Defendant-Appellee | : | |
| | : | Case Nos.   CT2024-0067 & |
| (J.A.S., ET AL. | : |                CT2024-0070 |
| | : | |
| Appellants) | : | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the Muskingum County Court of Common Pleas, Case No. CR2024-0110

JUDGMENT: Reversed and Remanded

DATE OF JUDGMENT: April 7, 2025

APPEARANCES:

For Plaintiff-Appellant

JOSEPH A. PALMER
27 North Fifth St.
Zanesville, OH 43701

For Appellants J.A.S., D.A., J.A.J.,
C.A., C.A.2, M.M., M.A., A.A., J.A.,
and C.A.J.

ELIZABETH A. WELL
Ohio Crime Victim Justice Center
3976 North Hampton Drive
Powell, OH 43065

For Defendant-Appellee

CHRIS BRIDGON
8138 Somerset Road
Thornville, OH 43076

*Hess, J.*,

{¶1}   Plaintiff-appellant the State of Ohio (the "State") and appellants J.A.S., D.A., J.A.J., C.A., C.A.2, M.M., M.A., A.A., J.A., and C.A.J.[1] appeal the May 13, 2024 entry of the Muskingum County Court of Common Pleas, in which the court sentenced defendant-appellee Keyle D. Anderson ("Anderson").

FACTS AND PROCEDURAL HISTORY

{¶2}   In February 2024, Anderson was indicted on five counts alleged to have occurred on or about January 1, 2021. Count One, reckless homicide, alleged that she recklessly caused the death of her husband (the "decedent"). Counts Two and Three, endangering children, alleged she was the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under 18 years of age, created a substantial risk to the child's health or safety by violating a duty of care, protection, or support, and the violation resulted in serious physical harm to the child.  The child named in Count Two was C.A.J., and the child named in Count Three was M.A.  Count Four, failing to provide for a functionally impaired person, alleged that Anderson was the caretaker of the decedent, a functionally impaired person, that she knowingly failed to provide him with any treatment, care, goods, or service that was necessary to maintain his health or safety, and that such failure resulted in serious physical harm to him.  Count Five, involuntary manslaughter, alleged she caused the decedent's death and such death was the proximate result of her committing or attempting to commit the felony of failure to provide for a functionally impaired person.

---

[1] At the trial level, M.A. and C.A.J. were referred to as M.M.A. and C.J.A., respectively. We will refer to them as M.A. and C.A.J. in this opinion as that is how they are referred to in their appellate brief.

{¶3}   Anderson initially pleaded not guilty. She later pleaded guilty to the failing to provide for a functionally impaired person and two endangering children counts in exchange for the State agreeing to dismiss the involuntary manslaughter and reckless homicide counts at the time of sentencing. The trial court accepted the plea and found Anderson guilty of the counts to which she pleaded guilty.

{¶4}   Prior to the sentencing hearing, the State submitted a sentencing memorandum asserting that Anderson failed to provide care to or call for help for her husband when he was dying of an overdose and instead videotaped his demise. The State asserted that one of the decedent's children stood next to him as he died, asking Anderson to get help for his father, and another child was ordered to leave her father when she tried to help him and later accused by Anderson of causing his death. In addition, numerous individuals submitted letters to the trial court, including, pertinent to this appeal: (1) the decedent's children—M.A., C.A.J., A.A., and J.A.; (2) the decedent's parents—J.A.S. and D.A.; (3) the decedent's siblings—J.A.J., M.M., and C.A.; and (4) the decedent's nephew—C.A.2 (collectively, the "relatives").

{¶5}   At the sentencing hearing, the assistant prosecutor told the court, "There are numerous members of [the decedent's] family here who want to speak to the Court, including several of his children.  And I believe I'd like to start with their statements, if it pleases the Court, those children who wish to -- to speak to the Court."  The court stated, "I will assure you, I have read every word of every letter more than once.  There were two children who were victims listed, and they'll be -- they'll be able to speak.  So if you want to start with that."  The assistant prosecutor said, "Okay.  We're going to start with [M.A.]  Okay.  I'm going to be reading [M.A.'s] statement."

**{¶6}** After doing so, the assistant prosecutor stated, "I know that [A.A.] also wanted to make a statement to the Court, which is one of [the decedent's] other children who was present in the home while this occurred." The court stated, "No. Go ahead." The court then asked if A.A. was one of the "the listed victims" "[o]f the child endangering," and the assistant prosecutor said, "No," and explained that A.A. "is a young child who was present in the home" "while her father passed away." The assistant prosecutor said, "Is it okay if she speaks, or no?" The court said, "No." The assistant prosecutor indicated that he was going to read A.A.'s letter aloud, and the court said, "No, I've read it," and instructed the assistant prosecutor to "move on." The assistant prosecutor stated, "Just so I'm clear, the Court's instruction is that I cannot read any other letters from victims in this case?" The court stated, "No, the victims, yes, the -- the listed victims. [C.A.J.], that's the other listed victim." The assistant prosecutor read C.A.J.'s letter. The assistant prosecutor then stated, "I think this brings me to my comments," and argued for the maximum aggregate sentence of 90 months. He noted the decedent's family sought justice for three years, and "[e]veryone here has written all of these letters."

**{¶7}** The trial court imposed an aggregate sentence of 54 months. Later that day, the State filed a "motion to correct sentencing and schedule continued sentencing hearing." The State asserted that "[t]he children, parents, and family members were directly and proximately harmed by the offenses and acts committed by the Defendant," so under Ohio Const., art. I, § 10a, they qualified as victims and had the right to be heard at the sentencing hearing. The State asserted that it "requested that each victim be heard, on the record, prior to sentencing," but the court "denied that motion concerning all but two of the victims, and ordered the State to move on with its argument . . . ." The State

requested that, prior to journalization of the sentencing entry, the court recognize its constitutional error and "correct the unlawful sentence by scheduling a continued sentencing hearing" at which the victims and prosecutor could make statements consistent with the victims' constitutional rights.

{¶8} The trial court issued an entry summarily denying the motion. The State then filed a motion for the court "to hold a hearing and/or produce an entry compliant with" R.C. 2930.19 and Ohio Const., art. I, § 10a. The State asserted that under R.C. 2930.19, the prosecutor, on request of a victim, has standing as a matter of right to assert, or challenge an order denying, the victim's rights. The State asserted that under R.C. 2930.19, the court had to hear the matter within 10 days of the assertion of rights, clearly state the reasons for any decision denying relief on the record or in a judgment entry, and provide a notice regarding appellate rights. The State asserted that the trial court did not conduct a hearing on the assertion of the victims' rights, did not state its reasons for denying them relief on the record or in a judgment entry, and did not provide the required notice. The State asked the court to hold a hearing on the assertion of rights, or alternatively, to issue an entry which contained sufficient facts and findings for appellate review and the appellate notice required by R.C. 2930.19.

{¶9} On May 13, 2024, the trial court issued an entry memorializing Anderson's sentence on the counts to which she had pleaded guilty and noting that the State agreed to dismiss the remaining counts at the time of sentencing. The next day, the State moved the court for an order dismissing the reckless homicide and involuntary manslaughter counts. On May 15, 2024, the trial court issued an order granting the motion.

**{¶10}** Subsequently, the State and relatives filed notices of appeal from the May 13, 2024 entry, and we have sua sponte consolidated the appeals for purposes of decision. The relatives present one assignment of error: "The trial court erred when it denied Victim-Appellants' rights to provide victim impact statements at sentencing, in violation of Victim-Appellants' rights pursuant to Ohio Const., art. I, § 10a(A)(3) and R.C. 2930.14." The State also presents one assignment of error: "The trial court denied victims of a crime their statutory and constitutional rights."

POSITIONS OF THE PARTIES

The Relatives

**{¶11}** The relatives contend the trial court erred by denying their rights to provide victim impact statements at sentencing in violation of Ohio Const., art. I, § 10a(A)(3) and R.C. 2903.14. They maintain that the decedent's children are victims for purposes of those provisions as persons against whom Anderson committed the criminal offense of endangering children because they were present during their father's death. They maintain that all the relatives are victims because they were directly and proximately harmed by Anderson's failure to provide for a functionally impaired person, i.e., the decedent, which ultimately led to his death. They assert that "due to the close and intimate nature of relationships between parents and children and among siblings, any loss of a parent, child, or sibling will cause surviving family members emotional, psychological, physical, and financial harm as a direct and proximate result of the loss." The relatives claim that the limited victim impact evidence the court allowed to be introduced shows the children "have suffered and will suffer emotionally, physically, and psychologically from the death of their father" and that they "will suffer financial harm due

to the loss of his support throughout their childhoods." They claim the decedent's parents and siblings suffered emotional, physical, and psychological harm due to the loss of the decedent, note that the decedent's parents have cared for his children after his death, and assert that "[i]n their later years," his parents will "face economic hardship due to the loss of support of their son." The relatives claim the decedent's nephew was present during his death and that "the horror and emotional and psychological trauma from being present during a preventable death has undoubtedly caused [him] direct and proximate harm." The relatives also assert that they are victims of the dismissed reckless homicide and involuntary manslaughter counts with the right to be heard under Ohio Const., art. I, § 10a in accordance with R.C. 2930.121.

{¶12} The relatives claim that "[u]nder the plain language of Ohio Const., art. I, § 10a and R.C. 2930.14, each person who meets the definition of 'victim' has the constitutional and statutory right to be heard orally, in writing, *or both*." They maintain that "[n]o victim was permitted to provide an oral victim impact statement to the trial court." They also maintain that "[o]nly the victims named in the indictment were permitted to be heard in writing, and, even then, only through the state."

The State

{¶13} The State maintains that the trial court denied victims of a crime their statutory and constitutional rights. The State contends that "[c]hildren, parents, and family members were directly and proximately harmed by the offenses and acts committed by the Defendant, and thus, as victims, have certain Constitutional Rights." The State asserts that the trial court denied the victims their right "to make a statement and have their words heard and preserved on the record, prior to the sentencing of the Defendant,

whose actions caused the death of their father/son . . . ." The State claims this was "in direct contravention of the Ohio Constitution" and asks us to "closely examine Article I, Section 10a(A)," which "directly sets forth the rights of crime victims in this State." In addition, the State asserts that the trial court failed to follow R.C. 2930.19 because it did not conduct a hearing regarding the assertion of the victims' rights, provide reasons for denying the victims' requested relief, or give the victims notice of their appellate rights. The State asks us to remand "for sentencing affording the victims their Constitutional and Statutory rights," or in the alternative, to direct the trial court to follow R.C. 2930.19 "with respect to the assertion of victim rights."

## The Defendant

{¶14} Anderson acknowledges it "may be correct" that the children "specifically named in the charges" qualify as persons against whom the offense of child endangering were committed and thus as victims. However, she suggests none of the other relatives are victims because they are not persons against whom her offenses were committed and suffered only indirect harm from them. She asserts that "[w]itnessing a crime, while potentially traumatic, does not necessarily equate to being 'directly and proximately harmed' in the legal sense." She also asserts that "emotional distress experienced by extended family members" and caring for a child after a death do not qualify as direct and proximate harm. In addition, Anderson asserts that the trial court has "authority to determine the most appropriate method of receiving victim input." She claims "[t]he court's approach of allowing oral statements from the direct victims while considering all written submissions, including those from persons secondarily affected, strikes a balance

between the rights of primary victims, the interests of those indirectly impacted, judicial efficiency, and the defendant's rights."

LAW AND ANALYSIS

Statutory Right of Victims to be Heard

**{¶15}** The relatives contention that the trial court violated their rights under R.C. 2930.14 is not well-taken. R.C. 2930.14(A) states: "Before imposing sentence upon . . . a defendant . . . for the commission of a criminal offense . . . the court shall permit the victim and victim's representative, if applicable, to be heard orally, in writing, or both during the sentencing or disposition proceeding." R.C. 2930.14(B) states: "The court shall consider a statement made by a victim or victim's representative under division (A) of this section along with other factors that the court is required to consider in imposing sentence or in determining the order of disposition."

**{¶16}** At the trial level, no argument was advanced that the relatives had the right to be heard under R.C. 2930.14, so the relatives have forfeited all but plain error as to their claim that the trial court violated the statute. *State v. Warner*, 2025-Ohio-667, ¶ 21 (5th Dist.) (appellant who failed to raise issue in trial court when it could have corrected any error forfeited all but plain error for purposes of appeal). The relatives have not developed a plain error argument on appeal, and we will not construct one for them. *See State v. Anderson*, 2024-Ohio-3181, ¶ 96 (5th Dist.) (declining to construct plain error argument on appellant's behalf). Moreover, R.C. 2930.19(D) states: "The failure of any person or entity to provide a right, privilege, or notice to a victim under this chapter does not constitute grounds . . . for setting aside a . . . sentence . . . ." Therefore, even if the trial court failed to provide the relatives with their right to be heard under R.C. 2930.14,

and such violation was plain error, the violation would not entitle the relatives to the relief they have requested—reopening of sentencing—because it is not grounds for setting aside a sentence. Accordingly, we overrule the relatives' assignment of error to the extent it asserts the trial court violated their rights under R.C. 2930.14.

Constitutional Right of Victims to be Heard

**{¶17}** "Article I of Ohio's Constitution is commonly known as Ohio's Bill of Rights." *Centerville v. Knab*, 2020-Ohio-5219, ¶ 11 ("*Knab*"). "Section 10a of that article was amended in 2017, effective February 5, 2018," by the adoption of Marsy's Law. *Id.* at ¶ 11. Marsy's Law "arose from a national victims'-rights movement" which "seeks to give crime victims constitutional rights that are equal to the rights of individuals accused of committing crimes." *Id.* at ¶ 12. "Consistent with this national movement, the Ohio amendment initiative sought to give crime victims and their families meaningful and enforceable rights." *Id.* at ¶ 13.

**{¶18}** "As adopted, Marsy's Law states that its express purpose is to secure justice and due process for victims and provide rights to victims that must be protected with the same vigor as an accused's rights." *Id.* at ¶ 16, citing Ohio Const., art. I, § 10a(A). Marsy's Law states:

> The victim, the attorney for the government upon request of the victim, or the victim's other lawful representative, in any proceeding involving the criminal offense or delinquent act against the victim or in which the victim's rights are implicated, may assert the rights enumerated in this section and any other right afforded to the victim by law. If the relief sought is denied, the victim or the victim's lawful representative may petition the court of appeals for the applicable district, which shall promptly consider and decide the petition.

Ohio Const., art. I, § 10a(B). Among other things, Marsy's Law grants a victim the right "to be heard in any public proceeding involving release, plea, sentencing, disposition, or

parole, or in any public proceeding in which a right of the victim is implicated[.]" Ohio Const., art. I, §10a(A)(3). As used in Marsy's Law,

> "victim" means a person against whom the criminal offense or delinquent act is committed or who is directly and proximately harmed by the commission of the offense or act. The term "victim" does not include the accused or a person whom the court finds would not act in the best interests of a deceased, incompetent, minor, or incapacitated victim.

Ohio Const., art. I, § 10a(D).

{¶19} The trial court did not deny M.A. and C.A.J. the right to be heard under Ohio Const., art. I, § 10(a)(A)(3). As we explain below, victims do have a right to make an oral statement at sentencing under that provision. But the trial court did not preclude M.A. and C.A.J. from making oral statements at sentencing. To the contrary, the trial court stated that there were "two children who were victims listed," i.e., M.A. and C.A.J., and that "they'll be able to speak." The record does not reflect that M.A. and C.A.J. made any effort to personally speak to the court after it made this statement. They evidently chose to instead make oral statements to the court via the assistant prosecutor, who read their written statements aloud. Therefore, we overrule the relatives' assignment of error to the extent it asserts that the trial court violated M.A. and C.A.J.'s rights under Ohio Const., art. I, § 10a(A)(3). We also overrule the State's assignment of error to the extent it asserts the trial court denied M.A. and C.A.J. their constitutional rights.

{¶20} The trial court did, however, deny the remaining relatives their right to be heard under Ohio Const., art. I, § 10(a)(A)(3). At a minimum, the remaining relatives qualify as victims by virtue of being persons who were directly and proximately harmed by the commission of the offenses of reckless homicide and involuntary manslaughter alleged in the indictment. Whether someone is a person who was directly and proximately

harmed by the commission of an offense presents a question of fact. *See generally Rieger v. Giant Eagle, Inc.*, 2019-Ohio-3745, ¶ 11 ("Generally, causation is a question of fact . . . ."). "[W]ith respect to questions of fact, an appellate court must determine whether the trial court abused its discretion." *Hinerman v. Grill on Twenty First, LLC*, 2018-Ohio-1927, ¶ 14 (5th Dist.). "An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable." *State v. Worley*, 2021-Ohio-2207, ¶ 90, citing *State v. Jackson*, 2005-Ohio-5981, ¶ 48.

**{¶21}** "Generally speaking, a consequence is a direct and proximate result of an act when the consequence is foreseeable and is produced by the natural and continuous sequence of events following the act." *State v. Yerkey*, 2022-Ohio-4298, ¶ 16. The reckless homicide count alleged that Anderson recklessly caused the decedent's death, and the involuntary manslaughter count alleged that she caused the decedent's death and that such death was the proximate result of her committing or attempting to commit the felony offense of failure to provide for a functionally impaired person. The letters submitted to the court establish that the remaining relatives, at a minimum, suffered emotional harm due to the decedent's death. It is foreseeable that a person's family members would suffer emotional harm as a result of their death, and the emotional harm was produced by the natural and continuous sequence of events following Anderson's alleged acts. Therefore, the trial court's determination that the remaining relatives were not victims was unreasonable and an abuse of discretion.

**{¶22}** Although the reckless homicide and involuntary manslaughter charges were ultimately dismissed, the remaining relatives still had the right to be heard at the sentencing hearing as victims of those offenses. R.C. 2930.121 provides that "[i]f a

prosecutor dismisses a count or counts of a complaint, information, or indictment involving the victim as a result of a negotiated plea agreement, the victim and victim's representative, on request, may exercise all of the applicable rights specified in the victim's bill of rights under Ohio Constitution, Article I, Section 10a, including the right to restitution if exercising the right to restitution is agreed to as part of the negotiated plea agreement." The remaining relatives could assert the right to be heard at the sentencing hearing under Marsy's Law because that proceeding was one "involving the criminal offense . . . against the victim or in which the victim's rights are implicated," Ohio Const., art. I, § 10a(B), given the State's agreement to dismiss the reckless homicide and involuntary manslaughter counts at the time of sentencing.

{¶23} Next, we consider what it means to be "heard" for purposes of Marsy's Law. Initially, we observe that contrary to what the relatives assert, the trial court did not refuse to let the remaining relatives be heard in writing. At the sentencing hearing, the court stated that it had "read every letter more than once," and in the sentencing entry, the court stated that it had considered "all statements." However, the court did refuse to let the remaining relatives be heard orally at the sentencing hearing, though we observe the record could have been clearer as to which of them were present and wished to be heard orally. None of the remaining relatives were mentioned by name at the hearing except A.A., but we infer they were all present and wished to be heard because the assistant prosecutor said that "[t]here are numerous members of [the decedent's] family here who want to speak to the Court, including several of his children" and that "[e]veryone here has written all of these letters," and each of the relatives submitted a letter. The court

indicated it would not permit any of the decedent's family members to be heard orally except for M.A. and C.A.J.

{¶24} Marsy's Law does not define the term "heard." Interpretation of the Ohio Constitution presents a question of law we review de novo. *In re K.B.*, 2025-Ohio-854, ¶ 17 (5th Dist.). "When interpreting the language of a constitutional provision ratified by direct vote, like Marsy's Law, we consider how the language would have been understood by the voters who adopted the amendment." *State v. Fisk*, 2022-Ohio-4435, ¶ 6, citing *Knab*, 2020-Ohio-5219, at ¶ 22, citing *Castleberry v. Evatt*, 147 Ohio St. 30, 33 (1946). "We generally apply the same rules of construction that govern the interpretation of statutes, starting with the plain language of the provision, *State v. Jackson*, 102 Ohio St.3d 380, 2004-Ohio-3206, 811 N.E.2d 68, ¶ 14, and 'considering how the words and phrases would be understood by the voters in their normal and ordinary usage,' *Knab* at ¶ 22, citing *District of Columbia v. Heller*, 554 U.S. 570, 576-577, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008)." *Fisk* at ¶ 6.

{¶25} "But in ascertaining the intent of the voters who approved the amendment, our inquiry must often include more than a mere analysis of the words found in the amendment." *Knab* at ¶ 22, citing *State ex rel. Swetland v. Kinney*, 69 Ohio St.2d 567, 570 (1982) ("*Kinney*"). "The purpose of the amendment and the history of its adoption may be pertinent in determining the meaning of the language used." *Id.*, citing *Kinney* at 570. "When the language is unclear or of doubtful meaning, the court may review the history of the amendment and the circumstances surrounding its adoption, the reason and necessity of the amendment, the goal the amendment seeks to achieve, and the remedy it seeks to provide to assist the court in its analysis." *Id.*, citing *Kinney* at 570,

citing *Cleveland v. Bd. of Tax Appeals*, 153 Ohio St. 97, 103 (1950), *overruled in part on other grounds, Denison Univ. v. Bd. of Tax Appeals*, 2 Ohio St.2d 17 (1965), paragraph three of the syllabus, and citing *Cleveland v. State*, 2019-Ohio-3820, ¶ 17 (lead opinion).

**{¶26}** Marsy's Law grants a victim the right "to be heard in any public proceeding involving . . . sentencing." Ohio Const., art. I, § 10a(A)(3). "Heard" is the "past tense and past participle of HEAR." https://www.merriam-webster.com/dictionary/heard (accessed March 20, 2025) [https://perma.cc/83Q6-XS5Q]. As used in Marsy's Law, "heard" is an intransitive verb because it does not have a direct object. When used as an intransitive verb, Merriam-Webster defines "hear," inter alia, as "to have the capacity of perceiving sound: to be able to become aware of sound," "to gain information: learn," and "to receive communication." https://www.merriam-webster.com/dictionary/hear (accessed March 20, 2025) [https://perma.cc/3EXP-B9FF]. Thus, one possible interpretation of the right to be heard under Marsy's Law is as the right to make an oral statement to the court; another is as the right to communicate, mandating no more than an opportunity to be heard via written submission to the court. *See generally United States v. Degenhardt*, 405 F.Supp.2d 1341, 1345 (D.Utah 2005) (explaining one interpretation of crime victims' right to be reasonably heard at sentencing under federal Crime Victims Rights Act was that "victims have a right to be heard via a *written* submission to the court," an interpretation which "would rely on the fact that, in some other contexts, courts have construed a right 'to be heard' as mandating no more than an opportunity to be heard in writing," but concluding law gave victims "the right to speak directly to the judge at sentencing" (Emphasis in original.)).

**{¶27}** We conclude that the voters who adopted Marsy's Law would have understood the right to be heard as the right to make an oral statement. "When the Marsy's Law initiative was placed on the 2017 general-election ballot, the language informed voters that the proposed amendment would expand the rights of victims and require that those rights be protected as vigorously as the rights of the accused." *Knab*, 2020-Ohio-5219, ¶ 15. "It indicated that the purpose of the amendment was to ensure 'due process, respect, fairness, and justice for crime victims and their families.'" *Id.* "The ballot language then listed the rights the proposed amendment would provide to victims," including "the right to be present and heard at all court proceedings." *Id.* "[W]e presume that the voters who approved an amendment were aware of existing Ohio law," *Knab* at ¶ 28, citing *State v. Carswell*, 2007-Ohio-3723, ¶ 6, which "imposes a mandatory duty upon the trial court to unambiguously address the defendant and provide him or her with the opportunity to speak before sentencing," *State v. Brown*, 2006-Ohio-1796, ¶ 8. Under these circumstances, voters would not have understood Marsy's Law to give victims the right to be present at sentencing but also give courts discretion to silence their voices and let them submit only written statements. Rather, voters would have understood the victim's right to be heard as the right to make an oral statement, just like defendants have.

**{¶28}** The trial court violated the right of the remaining relatives to be heard at the sentencing hearing under Marsy's Law by refusing to allow them to make oral statements. Therefore, we sustain the relatives' assignment of error to the extent it asserts that the trial court violated the rights of the remaining relatives, J.A.S., D.A., J.A.J., C.A., C.A.2, M.M., A.A., J.A., under Ohio Const., art. I, § 10a(A)(3). We also sustain the State's assignment of error to the extent it asserts that the trial court denied the constitutional

rights of the remaining relatives. Accordingly, we reverse the trial court's judgment and remand for resentencing. *See generally Cleveland v. Rudolph*, 2022-Ohio-2363 (8th Dist.) (reversing judgment and remanding for resentencing where trial court violated victim's rights under Marsy's Law by sentencing defendant in victim's absence). This decision renders moot the State's assignment of error to the extent it asserts the trial court denied the relatives their statutory rights by not following the procedures R.C. 2930.19 requires when resolving an assertion of victim's rights.

## Conclusion

{¶29}   The relatives' assignment of error is sustained in part and overruled in part. The State's assignment of error is sustained in part, overruled in part, and moot in part.

{¶30} The judgment of the Muskingum County Court of Common Pleas is reversed and the cause is remanded for resentencing consistent with law and this opinion.

By Hess, J.
Baldwin, P.J.
Smith, J. concur